Law Office of Peter D. Hoffman, P.C.
Peter D. Hoffman (PH -8306)
Attorney for Plaintiffs
200 Katonah Avenue
Katonah, NY 10536
(914) 232-2242        Phone
(914) 232-2245        Facsimile

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**H.B. and T.B., individually and o/b/o B.B.,**[1]

                                            **Plaintiffs,**

                                                                        **COMPLAINT**

         **- against –**

**BYRAM HILLS CENTRAL SCHOOL DISTRICT**

                                            **Defendant.**
------------------------------------------------------------------ x

         Plaintiffs, H.B. and T.B. individually and o/b/o B.B., a minor (collectively referred to as

"Plaintiffs"), for their Complaint against Defendant the Byram Hills Central School District

("BHCSD"), by their attorneys, Law Office of Peter D. Hoffman, P.C., allege as follows:

                                            **THE PARTIES**

1.       Plaintiffs, H.B. and T.B., parents of B.B., a minor, have been residents of Armonk, New

         York within BHCSD during the time of their impartial hearing through the present.

2.       Plaintiff B.B. is diagnosed with Attention Deficit Hyperactivity Disorder, Dyslexia,

---

1 Plaintiffs are not expressly named herein by their given names because of the privacy guarantees provided in the
IDEA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99
(hereinafter, "FERPA"). All student parties and actors herein are listed by pseudonym. This is done to protect their
privacy pursuant to and in the spirit of FERPA. Whereas this action will require the inspection of student records of all
student parties herein, Plaintiffs herein seek to protect the identity of all listed student parties by using pseudonyms.

advanced endocrine system, food allergies, anxiety disorder, developmental language disorder, and is prone to clinical depression. As such, he has a qualified disability and is eligible for special education services and supports.

3. Defendant BHCSD, located at 10 Tripp Lane, Armonk, NY 10504, is the local educational agency ("LEA") as defined by 20 U.S.C. § 1401(19) and 34 C.F.R. § 300.28, that is responsible for providing a free and appropriate public education ("FAPE") to its students who are eligible for special education services and supports.

4. Defendant BHCSD denied B.B. a FAPE in the 2010-11, 2011-12, and 2012-13 school years.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under the Individuals with Disabilities Education Act ("IDEA") without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). Jurisdiction also is conferred by 28 U.S.C. §§ 1331, 2201, and 2202.

6. Venue is properly laid in the United States District Court for the Southern District of New York, as authorized by 28 U.S.C. § 1391(b)(2), in that H.B. and T.B. reside in Armonk, Westchester County, New York and BHCSD has its headquarters in Armonk, Westchester County, New York.

7. Plaintiffs originally filed a complaint in this Court against BHCSD, the New York State Education Department, and John B. King, Jr. in his representative role as Commissioner of Education for the New York State Education Department due to severe administrative delays in the IHO rendering a decision. *See* 14 cv 6796 (VB). When the Impartial Hearing Officer (hereinafter, "IHO") finally rendered a decision on October 15, 2014, Plaintiffs

appealed to the State Review Officer (hereinafter, "SRO"). When the SRO rendered a decision dismissing Plaintiffs' appeal, Plaintiffs sought leave of this Court to amend their Complaint in order to appeal the SRO decision and seek de novo review of the underlying record pursuant to 20 U.S.C. § 1415(i)(2)(A). However, the Court dismissed the complaint on procedural and jurisdictional grounds and, accordingly, Plaintiffs' claims as to the underlying record were not reviewed. *See Memorandum and Decision* of Judge Briccetti in 14 cv 6796, dated July 20, 2015 (ECF Doc. No. 55).

8.   The Proposed Amended Complaint (ECF Doc. No. 41) was filed on April 24, 2015, less than 90 days from the date of the January 30, 2015 SRO decision. This was within both the 90-day federal statute of limitations and the 120-day state statute of limitations to appeal the SRO decision. *See* 20 U.S.C. §1415(i)(2)(B); *see* N.Y. Educ. Law § 4404(3)(a).

9.   Accordingly, Plaintiffs now bring this action pursuant to 20 U.S.C. § 1415(i)(2)(A) to appeal the decision of the SRO and seek *de novo* review of the underlying record.

## PRELIMINARY STATEMENT

10.  This action is brought pursuant to the IDEA, 20 U.S.C. § 1401, *et seq.* to ensure a disabled child's right to a FAPE, 20 U.S.C. § 1415(i)(2)(A), New York State's implementing laws and regulations, Article 89 of the New York State Education Law, N.Y. Educ. §§4401 *et seq.*, 8 NYCRR §§ 200 *et seq.*, 42 U.S. C. § 1983 and public policy.

11.  This action is related to *H.B. et al. v. NYSED et al.*, 14 cv 6796 (VB).

12.  Plaintiffs seek a remedy in this Court because administrative remedies have been exhausted under New York State's administrative procedures.

13.  Student B.B. was denied access to a FAPE in the 2010-11, 2011-12, and 2012-13 school

years by Defendant BHCSD.[2]

14.     Plaintiffs previously invoked New York State's administrative procedures to secure compensatory education for the 2010-11 school year and reimbursement for the tuition they paid in the 2011-12 and 2012-13 school years to The Gow School ("Gow"), the unilaterally selected private school, after B.B. was denied a FAPE during the 2010-11, 2011-12, 2012-13 school years.

15.     Plaintiffs received the IHO Decision in October 2014 and filed an appeal of the IHO Decision to the Office of State Review ("OSR") on November 24, 2014. Defendant filed a Cross-Appeal of the IHO's decision regarding the 2010-11 school year. The SRO rendered a decision on January 30, 2015 dismissing Plaintiffs' appeal and dismissing Defendant's Cross-Appeal.

16.     This action is brought pursuant to the provisions of the IDEA, and, in particular, 20 U.S.§1415(i)(2)(A), in order to seek:

    i.      a modified *de novo* review resulting in: (i) reversal of the IHO, Jean M. Lucasey's, arbitrary and capricious "Findings of Fact and Decision" dated October 15, 2014 denying relief for the 2011-12 and 2012-13 school years; (ii) reversal of the Decision of Justyn P. Bates, State Review Officer (hereinafter "SRO") dated January 30, 2015, dismissing Plaintiffs appeal for tuition reimbursement for Gow for the 2011-12 and 2012-13 school years;

---

2 Plaintiffs were awarded compensatory education by the IHO for the 2010-11 school year (IHO Decision, page 29). Since Plaintiffs received a remedy for that school year at the administrative level, they do not seek a remedy for that school year from this Court.

ii.    A determination by this Court that, based on the underlying evidentiary record, Plaintiffs amply meet their burden of proof necessary to establish their entitlement to reimbursement for tuition paid to Gow for the 2011-12 and 2012- 13 school year because the District failed to provide B.B. with a free and appropriate public education ("FAPE");

iii.    An order declaring Plaintiffs the "substantially prevailing parties" and granting Plaintiffs leave to file a fee application pursuant to the fee shifting provisions of the IDEA, 42 U.S.C. §1981 and §1985;

iv.    An order directing Defendant BHCSD to reimburse Plaintiffs as requested;

v.    An order granting Plaintiffs such other, further and different relief as may be just under the circumstance.

### CLAIM I
### PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT FOR THE 2011-12 AND 2012-13 SCHOOL YEARS

17.    A district may be required to reimburse parents for their expenditures for private school educational services obtained for a student by the parents if (1) the services offered by the district were inappropriate, (2) the services selected by the parent were appropriate; and (3) equitable considerations support the parent's claim. *School Committee of the Town of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359, 370 (1985). Plaintiffs seek *de novo* review of the underlying record and a finding that Plaintiffs are entitled to tuition reimbursement under the *Burlington* test.

18. Plaintiffs are entitled to tuition reimbursement for their private placement of B.B. at Gow in the 2011-12 and 2012-13 school years because all three Prongs of the *Burlington* test are met.

19. First, BHCSD did not provide B.B. a FAPE in the 2011-12 and 2012-13 school years, as discussed below.

20. Second, Gow is an appropriate placement for B.B. for the 2011-12 and 2012-13 school years, as discussed below.

21. Third, as discussed below, the equities favor the Plaintiffs, as Plaintiffs cooperated with BHCSD but BHCSD did not cooperate with the Plaintiffs, as demonstrated by its retaliation and spoliation of educational records.

## CLAIM II
## BHCSD DENIED B.B. FAPE IN THE 2011-12 AND 2012-2013 SCHOOL YEARS[3]

22. FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA and (b) the Individualized Education Plan ("IEP") developed by its Committee on Special Education ("CSE") through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits. *Board of Educ. of the Hendrick Hudson Cent. School District v. Rowley*, 458 U.S. 176, 206-07 (1982); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005).

---

3 BHCSD also denied B.B. a FAPE in the 2010-11 school year. However, since the IHO found that BHCSD denied B.B. a FAPE in the 2010-11 school year and awarded Plaintiffs compensatory education for that year, Plaintiffs do not seek de novo review of this Court concerning the 2010-11 school year.

23. FAPE "consists of educational instruction specifically designed to meet the *unique needs* [emphasis added] of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, at 188.

24. A district may be required to reimburse parents for their expenditures for private school educational services obtained for a student by the parents, if (1) the services offered by the district were inappropriate, (2) the services selected by the parent were appropriate; and (3) equitable considerations support the parent's claim. *School Committee of the Town of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359, 370 (1985).

**A.  BHCSD Did Not Provide B.B. with a FAPE During the 2011-12 School Year.**

**1.  2011-12 IEP Was Not Reasonably Calculated to Provide B.B. with FAPE**

25. Plaintiffs disagree with the IHO Decision and SRO Decision that the 2011-12 IEP was appropriate to provide B.B. with a FAPE (IHO Dec. 25; SRO Dec. 7, 13).[4]

26. The 2011-12 IEP was inappropriate, as it was not reasonably calculated to confer educational benefit upon B.B.. It provided the same services that had been provided to B.B. in previous years, which had proven unsuccessful year after year (D-13; T: 1216, 1290).

27. At a CSE meeting on March 23, 2011 to develop B.B.'s 2011-12 IEP, Plaintiffs indicated their concern that BHCSD was not meeting B.B.'s needs and that B.B. was not functioning on a 7th grade level. HB also voiced her concern that socially, B.B. was not a part of the mainstream at BHCSD and only befriended students in his special classes (T: 224-225).

---

4 The letter "T" followed by numbers refers to the corresponding pages in the hearing transcript; the letters "IHO", "D" and "P" followed by numbers refers to the corresponding exhibits; IHO Dec. followed by numbers refers to that page in the IHO decision; SRO Dec. followed by numbers refers to that page in the SRO decision.

However, the CSE determined that B.B. should continue to receive the same services provided previously (D-13).

28. At this point, Plaintiffs worried that BHCSD was unable to provide B.B. with FAPE, as B.B. had not made meaningful, if any, progress in accordance with his IEP goals. Following the 2011-12 CSE meeting, HB took B.B. to be privately evaluated by psychologist Dr. Randall Thomas, PhD in July of 2011 because she did not feel BHCSD was appropriately addressing B.B.'s needs (D-25; T: 1292).

29. Plaintiffs disagree with the IHO Decision insofar as it determined that Dr. Thomas does not have the foundation of knowledge necessary to judge the appropriateness of an educational program (IHO Dec. 14). Dr. Thomas clearly has the education and experience necessary to judge the appropriateness of an educational program. Dr. Thomas is New York State licensed psychologist with extensive experience working with public schools as a certified school psychologist, having served as same at the South Orangetown Central School District. Dr. Thomas's training at Adelphi University gave him a certification in the field of clinical psychology with a dual certificate in school psychology (T:1015; P-L).

30. Dr. Thomas also has extensive experience in private practice, evaluating children with learning disabilities and other neuropsychological issues, performing diagnostic work, and providing therapy services to children (T: 1017). He helps teachers and CSE teams formulate interventions and has testified in approximately 20 cases similar to this one. He also contracts with school districts to perform Independent Educational Evaluations ("IEE") (T: 1083). Additionally, Dr. Thomas met with and evaluated B.B., met with B.B.'s

parents, performed testing on B.B., evaluated B.B.'s IEP at BHCSD, evaluated the program at Gow, and reviewed reports from Gow (T: 1018, 1020, 1022, 1048, 1055).

31. Plaintiffs disagree with the IHO Decision insofar as it determined that Dr. Thomas cannot fairly be considered a professional educator to whom deference must be afforded pursuant to *Arlington Central School District v. D.K. and K.K. obo C.K.*, 2002 U.S. Dist. LEXIS 21849, *27 (S.D.N.Y. 2002) and *County School Board of Henrico County, Virginia v. Z.P.*, 399 F.3d 298 (4th Cir. 2005) (IHO Dec. 15).   First, as it concerns *Arlington*, the IHO erred in deciding on Dr. Thomas's status as a professional educator under that case. *Arlington* applies to expert reports, not professional educators. Second, as it concerns *Henrico*, Dr. Thomas must be afforded deference as a professional educator because he worked in a public school as an educator, much like the professional educators that work at BHCSD (T:1015; P-L; PPHB 11-12; PP 6). *Henrico* at 307.

32. The court in *Arlington* did not touch upon deference to professional educators, but rather found that a school district failed to provide an appropriate IEP because it did not take an expert report of a private evaluator into consideration. *Id.*

33. Dr. Thomas is a New York State licensed   psychologist with extensive experience working with public schools and in private practice with children with learning disabilities and neuropsychological disorders (T:1015, 1017; P-L). Accordingly, Dr. Thomas's expert recommendations and report must be taken into account in determining whether the proposed IEP was reasonably calculated to confer educational benefit on B.B.. *Arlington* at *27.

34. Plaintiffs provided BHCSD with the recommendations and report of Dr. Thomas, a private psychologist consultant who is an expert in the field of psychology (T:1015; P-L). The

2011-12 IEP was not reasonably calculated to confer educational benefit on B.B. because it did not take comport with Dr. Thomas's recommendations, and in fact, did not even take his recommendations into account. *Arlington* at *27.

35.    It is clear that, under *Arlington*, Dr. Thomas's expert report must be taken into consideration in creating the IEP in order for the IEP to be reasonably calculated to confer educational benefit on B.B., *id.,* and the IHO erred in failing to make that analysis.

36.    Dr. Thomas must be afforded deference as a professional educator because he worked in a public school as an educator, much like the professional educators that work at BHCSD (T:1015; P-L). *County School Board of Henrico County, Virginia v. Z.P.*, 399 F.3d 298 (4th Cir. 2005) ([A]t all levels of an IDEA proceeding, the opinions of the professional educators are entitled to respect"). *M.M. v. Sch. Dist.,* 303 f.3d 523, 533 (4th Circ. 2002) ("administrative officers . . . must give appropriate deference to the decisions of professional educators"). Dr. Thomas is similarly situated to BHCSD's professional educators, as he performed IEE's for school districts and worked as a school psychologist at the South Orangetown Central School District, and thus he must be given the same deference as the district educators. *Id.*

37.    In his testimony, Dr. Thomas explained that a serious toll had been taken on B.B. after he had experienced years of chronic academic failure at BHCSD (T:1033-1034). He advised that B.B. needed the most intensive comprehensive program to get him on a positive track as quickly as possible (T:1034) and recommended 3 years of remediation in an intensive, structured, and routine program heavily oriented on language development utilizing scientifically based strategies in a highly supervised residential setting (D- 25, p. 13).

38.     In his report, Dr. Thomas explained that B.B. had been largely educated in small, self-contained classrooms with a student to teacher ratio of 15:1 or 12:1. These classes contained students with a wide range of disabilities and had no reading specialist. B.B. did not have the assistance of a 1:1 aide in such classrooms, except for in 4th Grade when BHCSD attempted to mainstream him, which had a detrimental impact on B.B.'s emotional status (D-25, p.2). Dr. Thomas stated that only a 24 hour residential center could provide the level of support needed to ameliorate his academic failure, remediate his learning disabilities, and give him experiences of success to reconstitute his self-esteem (D-25, p. 13).

39.     Dr. Thomas explained that such an intensive residential setting is also necessary to address B.B.'s multiple learning disabilities and significant ADHD (D-25, p. 8). Dr. Thomas recommended the application of proven scientifically-based remedial strategies (D-25, p. 15). Although HB sent BHCSD Dr. Thomas's report in September of 2011, the CSE did not meet to discuss it until the 2012-2013 CSE meeting (D-25, D-40; T: 1298). Dr. Thomas's recommendations were never factored into B.B.'s 2011-12 IEP and it was not sufficiently tailored to enable B.B. to make meaningful progress. *Arlington* at *27.

40.     Plaintiffs disagree with the IHO's finding of fact that no documentary evidence in the record at the time of the 2011 CSE meeting suggested that B.B. could not receive a FAPE in the District's school (IHO Dec. 26). The record shows that B.B. had been failing at BHCSD year after year (D-17; T:1216, 1290; PPHB 6) and yet the same programs that had failed B.B. in the past were recommended again (D-13; PP 3). Further, Plaintiffs point out that, although HB provided BHCSD with Dr. Thomas's expert report on September 12, 2011, BHCSD failed to schedule a CSE meeting to review the report in

the 2011-12 school year, and in fact, did not do so until the 2012-2013 CSE meeting (D-25, D-40; T: 1298).

41. Furthermore, the IDEA, incorporating requirements under No Child Left Behind ("NCLB"), requires that a school district's recommended program and services, to the extent practicable, be based on *scientifically based or peer-reviewed research*. 34 C.F.R. 300.320(a)(4)(2006); 8 NYCRR 2004 (d)(2)(v). The programs offered by BHCSD were not based on or evidenced by scientifically or peer-reviewed research and the proposed IEPs were not corroborated with Dr. Thomas' reports, which are based on scientifically accepted research.

42. Under the IDEA, when a child's behavior impedes the child's learning, the school district must consider the use of behavioral interventions to address that behavior in developing the IEP. *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 172 (2d Cir. 2009); 20 U.S.C. § 1414(d)(3)(B)(I). The failure to conduct a FBA is a "serious procedural violation." It rises to the level of a denial of FAPE if the IEP does not "adequately identif[y] the problem behavior and prescribe[] ways to manage it." *F.L. v. N.Y. City Dep't of Educ.* 2014 U.S. App. LEXIS 296, 8-9 (2d Cir. Jan. 8, 2014), citing *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012); 8 NYCRR §200.22(b)(2); 8 NYCRR § 200.4(b)(v).

43. Here, B.B.'s behavior impeded his learning (D013, pg. 8), yet BHCSD failed to provide a Functional Behavior Assessment ("FBA") and Behavior Intervention Plan ("BIP") year after year (T: 239, 1162). In fact, at the time of the 2011-12 CSE meeting, nobody at BHCSD had ever mentioned a behavior plan to Plaintiffs (T: 1220). Plaintiffs disagree with the Findings of Fact insofar as the IHO determined that Dr. Stowell's testimony concerning discussion of a FBA and BIP at the March 23, 2011 CSE meeting is more

credible than HB's (IHO Dec. 12). Considering IHO Lucasey was not even present at hearing to listen to the testimony firsthand, IHO Lucasey should not be afforded deference on the decision to credit Dr. Stowell's testimony over that of H.B.

44. Plaintiffs further disagree with the SRO's finding that the March 2011 CSE discussed completion of a FBA and development of a BIP during the 2011-12 school year (SRO Dec. 3). HB credibly testified at hearing that there was no such discussion at the March 23, 2011 CSE, and the comments section of the 2011-2012 IEP accurately reflect this (D-13, pg. 2; T: 1287).

45. Plaintiffs also disagree with the IHO Decision insofar as it determined that BHCSD recognized the need for a formal behavior plan for B.B. for his 8th grade year and planned to administer a FBA at the beginning of the school year in order to formulate a BIP to address his interfering behaviors (IHO Dec. 26). At no time did the CSE seek consent from Plaintiffs to perform a FBA/BIP. At the end of the 2010-11 school year, BHCSD had not begun a FBA in preparation for the 2011-12 school year, and had not asked for parental consent to do so (T: 238).

46. Plaintiffs disagree with the SRO's finding that "the IHO's credibility determination is well supported," (SRO Dec. 13, fn 10), as it concerns the IHO's finding that the March 2011 CSE discussed completion of a FBA and development of a BIP during the 2011-12 school year. In fact, Plaintiffs contend that this finding of the IHO (IHO Dec. 12) is erroneous, as the record clearly reflects that this was not discussed at that meeting (T: 1220; D-13, pg. 2; T: 1287). Further, IHO Lucasy was not even present at the hearing in order to make a credibility determination and thus should not be afforded deference on this issue.

47.   Further, Plaintiffs disagree with the IHO Decision insofar as it determined that the 2011-12

IEP's inclusion of a BIP was reasonably calculated to address his behavioral needs (IHO

Dec. 26), as Plaintiffs assert BHCSD never intended to implement a BIP (D-13; T: 238;

1287). Even worse, BHCSD did indicate on B.B.'s IEP that a BIP was needed, yet none

was ever created, a violation of 8 N.Y.C.R.R. § 200.22.

48.   BHCSD completely failed to recognize the effect B.B.'s dyslexia and ADHD had on his

self-esteem and motivation to learn. Dr. Stowell testified that he was aware that Orton

Gillingham reading program is scientifically recommended for children with dyslexia,

and that the District was aware B.B. was diagnosed with dyslexia. (T:154).

49.   Despite this, after many years of requesting a reading specialist, it was only after the March

2011 CSE meeting and learning that the parents sent an application to Gow, that BHCSD

finally provided a BOCES specialist in reading to work with B.B. (D-13). Unfortunately

this program proved to be unsuccessful for B.B. due to his attentional and behavioral

issues, which made the program ineffective (T:605-607; P-E).

50.   Still, in violation of 8 N..Y.C.R.R. §200.22, no BIP or FBA was put into place to deal with

these behavioral issues (T:606-607). These behavioral issues were never effectively

addressed and it had a direct impact on B.B.'s ability to access a FAPE.

**B.     BHCSD Did Not Provide B.B. with a FAPE During the 2012-13 School Year.**

     **1.     2012-13 IEP Was Not Reasonably Calculated to Provide B.B. with FAPE**

51.   The IHO and SRO erred in determining that BHCSD offered B.B. a FAPE in the

2012-13 school year (IHO Dec. 28; SRO Dec. 7, 14). The 2012-13 IEP was

inappropriate, as it was not reasonably calculated to confer educational benefit upon B.B.

52.  Following completion of B.B.'s first year at Gow, HB again tried to cooperate with
     BHCSD to develop an IEP for B.B.'s 2012-13 school year. In the proposed 2012-2013
     IEP, BHCSD was offering an unstructured Flex program that had never been
     implemented before at BHCSD (D-40; T:126). Further, the programs offered in the
     proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas
     (T:1053). *See E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d
     417, 439-40 (S.D.N.Y. 2010).

53.  Plaintiffs re-enrolled B.B. at Gow for the 2012-2013 school year because he was making
     progress for the first time ever and they had no appropriate alternative placement
     provided by BHCSD (T: 1531,1543-44).

54.   On June 7, 2012, BHCSD held an Annual Review, during which the private
     psychological evaluation by Dr. Thomas, the reading evaluation, and parental input were
     supposed to be considered for IEP development (D-40, D-25).

55.  Plaintiffs were fully cooperative and attended the CSE meeting to determine what
     program the CSE would offer for the 2012-2013 school year (T: 1532).

56.  A follow-up Annual Review was held on August 15, 2012, where final program
     recommendations and an IEP were developed. During this meeting, the CSE considered
     material from Gow, input from the Headmaster of Gow, and further input from Plaintiffs.
     However, BHCSD again completely failed to take Dr. Thomas's recommendations that
     B.B. be placed in a private residential program and the parents' recommendation that

B.B. stay at Gow into account. Further, BHCSD continued to offer the same program that had failed B.B. in the past (D-25, D-40; T: 1542).[5]

57. In the IHO's Findings of Facts, the IHO determined that the IEP for B.B. for the 2012-13 school year contained an individualized reading program (IHO Dec. 16). However, when Plaintiffs requested information concerning the methodology that would be utilized in this program and whether the program's instructor was trained in the Orton-Gillingham methodology, BHCSD failed to provide Plaintiffs with answers. HB had called Ms. Kushnir and Ms. Cunningham several times to find out what the methodology of the reading program was, and she was never given this information. Moreover, the 2012-2013 IEP did not even explain what the multisensory reading program curriculum consisted of (T: 1277-78).

58. BHCSD failed to propose an appropriate Orton-Gillingham reading program, with immersive instruction that would be integrated into each of B.B.'s core classes. BHCSD continued to ignore B.B.'s diagnosis of dyslexia in developing his program, and as such, could not possibly develop a reading program appropriate to meet his unique needs (T: 1151).

59. Plaintiffs disagree with the IHO's Findings of Facts insofar as the IHO determined that the 2012-13 IEP afforded B.B. opportunities to socialize in the mainstream (IHO Dec. 17). B.B. had few friends at BHCSD and only befriended the other learning disabled children. (T:1284). In fact, B.B. had never been a part of the mainstream at BHCSD (T: 1281).

---

[5] The Parents cooperated with the District and attended this CSE meeting despite the egregious retaliatory conduct by the District in reporting them to CPS and despite the damage this false CPS report caused to B.B. and his family.

60.   Plaintiffs also disagree with the IHO's and SRO's determination that Plaintiffs had a full opportunity to participate in the formulation of the 2012-13 IEP (IHO Dec. 27; SRO Dec. 14). As discussed below, Plaintiffs felt attacked by BHCSD's retaliatory action of reporting them to Child Protective Services ("CPS"), thus affecting the extent to which they felt they could participate in the development of the 2012-2013 IEP (T: 1542).

61.   Plaintiffs disagree with the SRO's contention that Plaintiffs' counsel's attendance at the CSE meeting was sufficient to "ensure that their views were represented." (SRO Dec. 14). BHCSD's retaliatory action of reporting Plaintiffs to CPS shows the District's complete lack of cooperation with the parents, as further discussed below, and shows that the District was not willing to listen to the Plaintiffs' viewpoint. The fact that counsel was present does not change this.[6]

62.   Plaintiffs also disagree with the Conclusions of Law insofar as the IHO determined that Dr. Thomas's report was fully considered at the June 2012 CSE meeting (IHO Dec. 28). Although the IEP notes Dr. Thomas's report that B.B.'s general verbal/conceptual abilities fall significantly below his nonverbal conceptual abilities, he has significant difficulty making associative connections between discrete verbal elements, and has difficulty processing the basic sounds of language and phonemes, BHCSD failed to propose speech/language therapy to meet these difficulties (D-25, D-40).

63.   Further, BHCSD failed to consider a residential placement for B.B. even though Dr. Thomas recommended a residential placement (D-25, D-40; T: 1048). With the exception

---

[6] *See HB, et al, v. Byram Hills Union Free School District, et al.*, Docket No.: 7:14-cv-03843-KMK. The Defendants in that case moved to dismiss and, after a hearing before Judge Seibel on March 23, 2015, Plaintiffs survived the motion to dismiss.

of a few additional services, the 2012-2013 IEP was essentially the same as the previous

IEPs, and was therefore inappropriate to meet B.B.'s unique educational needs (D-40; T:

1053).

64.     The 2012-13 IEP did not significantly change from the 2011-12 IEP (D-13), and the IEP

could not be reasonably calculated to confer educational benefit on B.B. since the CSE

again failed to consider Dr. Thomas's expert recommendations in developing B.B.'s IEP.

*Arlington* at \*27. The intensity of the program offered in the IEP was not at the level of

Dr. Thomas' expert recommendation. Dr. Thomas testified that in looking at the

2012-2013 IEP (D-40), the IEP did not match his recommendations and that IEP seemed

consistent with the 2011-2012 IEP (D-13) without any significant changes in terms or

frequency or intervention.

65.     Furthermore, even if BHCSD added a special aide to the class, Dr. Thomas stated the

service would still not come anywhere close in function (T: 1052, 1053). The programs

offered by BHCSD in both the 2011-12 and 2012-13 school years were not based on or

evidenced by scientifically or peer-reviewed research in violation of   34 C.F.R.

300.320(a)(4) (D-13, D-40; T: 931).

66.      Further, the proposed IEPs were not corroborated with Dr. Thomas' reports, which are

based on scientifically accepted research. (T: 1034, 1046, 1053). BHCSD made no effort

to take B.B.'s progress at Gow in 2011-12 into account in creating the 2012-13 IEP,

further showing that the 2012-13 IEP was inappropriate.[7]

_____

[7]In *E.S.*, the Court held that the IEP was inappropriate because the CSE failed to adjust it from the previous year to reflect data on the student's progress at the private placement, stating, "[t]o implement an IEP in light of evidence that B.S. progressed at Maplebrook would be inherently regressive...recycling an old IEP is not legally sufficient because it

67. Plaintiffs contend that the District failed to take Dr. Thomas's report into account and that, on appeal to this Court, deference should be given to Dr. Thomas's findings.

68. Plaintiffs disagree with the SRO's finding that the appropriateness of a residential placement is unsupported by the record (SRO Dec. 16), as the record clearly shows that such a placement is appropriate (D-25, D-40; T: 1048).

**CLAIM III**
**GOW PROVIDED THE APPROPRIATE PROGRAM FOR B.B. FOR THE 2011-12 AND 2012-13 SCHOOL YEARS**

69. Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein. Claim XIII is asserted solely against the Defendant BHCSD and not the State Defendants.

70. Since the IHO and SRO found that BHCSD provided an appropriate program in the 2011-12 and 2012-13 school years, they did not reach the determination of whether Gow was an appropriate program for B.B. Gow was the appropriate placement for B.B. in the 2011-12 and 2012-13 school years, as discussed below.

71. Plaintiffs seeking reimbursement bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate. *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 104 (2nd Cir. 2000). In doing so, Plaintiffs are not barred from reimbursement where a private school they choose does not meet the IDEA definition of a FAPE. See 20 U.S.C. §1401(9). An appropriate private placement need not meet state education standards or requirements. *Florence County School District Four v. Carter*, 510

---

is not individualized or appropriate for B.S. for the specific school year to which it pertains." *Id.* at 442.

U.S. 7, 7 (1993). For example, a private placement need not provide an IEP for the disabled

student. *Id.*[8]

**A.      The Gow Program Is Reasonably Calculated To Provide Educational Benefits To
          B.B.**

72.      Gow is "reasonably calculated to enable the child to receive educational benefits" to B.B..

         *Gagliardo v. Arlington Cent. Sch. Dist.,* 489 F.3d 105, 112 (2nd Cir. 2007); *Frank G. v.*

         *Board of Educ. Of Hyde Park*, 459 F. 3d 356, 364 (2006) (quoting *Rowley* at 207).

73.      A private placement meets this standard if it is "likely to produce progress, not regression."

         *Walczak   v. Florida Union Free School District*, 142 F. 3d 119, 130 (2d Cir., 1999).

74.      Gow's program is reasonably calculated to provide educational benefits because it is

         uniquely tailored to meet B.B.'s needs.

75.      In *Jennifer D.*, the Court found that the parent had carried her burden to establish that the

         unilateral placement was specially designed to meet the child's needs because it provided a

         sufficiently structured environment with specific services. *Id.* at 420.[9]

76.      Dr. Thomas (T:1064, 1076-80, 1125-33) and the witnesses from Gow testified about B.B.'s

         progress each year at Gow. (T:1371-4, 1458-60, 1468-9, 1482, 1496-7, 1504, 1510-12).

         BHCSD failed to provide any rebuttal testimony, evidence of an observation of B.B. at

         Gow, or independent documentation concerning the appropriateness of Gow as it concerns

         B.B.

---

[8]*See also Jennifer D. as Parent of Travis D. v. New York City Department of Education*, 550 F. Supp. 2d 420, 233 L.
Ed Law Rep. (S.D.N.Y. 2008) (holding that parents presented sufficient evidence of appropriateness of private
placement when several witnesses, including a professional working with the student, explained why the program met
the student's educational needs).

[9]*See also Frank G.* at 367 ("The student's progress, viewed together with...the program offered at the unilateral
placement, is sufficient to support he determination that the unilateral placement was appropriate.")

**B.     Gow Satisfies The LRE Provisions Of IDEA For Purposes Of Reimbursement**

77.     The consideration of whether the disabled child is being educated in the least restrictive environment is not to be done in a vacuum, but instead it is necessary to consider the least restrictive environment consistent with the child's unique needs. *Walczak* at 122; *B. V. Milford Bd. Of Educ.*, 103 F. 3d 1114, 1122 (2d Cir., 1997).

78.     The Court in *Warren G. V. Cumberland County School District*, 190 F.3d 80, 84 (3d Cir., 1999) held that an appropriate private placement is not disqualified because it is a   more restrictive environment than the public placement.

79.     The mainstreaming requirement states that children may be educated separately from the regular education environment "when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. Section 1412(a)(5)(A). Here, the nature of B.B.'s disability and needs presently renders it impossible for him to be educated satisfactorily in a mainstream environment.

80.     In *Arlington*, the District Court found that the private placement was appropriate despite the fact that it served disabled students only. The parents had shown with compelling evidence that the methods utilized by the private school had significantly benefitted the student and that his test scores improved dramatically after one and a half years there.   *Id.* at *10.[10]

---

[10] A comparison would show that Gow and Kildonan, the school in *Arlington*, have substantially similar educational/academic programs related to the immersive use of the Orton-Gillingham model, while Gow also provides a behavioral model.

81. While students with disabilities should be educated in the LRE, 20 U.S.C. Section 1412(a)(5), parents are not held to the same strict standard of placement as are school districts. *W.S. and L.S. on behalf of C.S. v. Rye City School District*, supra, 454 F. Supp. 2d at 139, citing *M.S.* at 105; *Rafferty v. Cranston Pub. Sch. Comm.*, 315 F. 3d 21, 26-27 (1st Cir., 2002).

82. While a court may consider the least restrictive environment issue, a parent's inability to place his child in the LRE does not bar parental reimbursement. *W.S.* at 139, citing *Cleveland Heights Univ. Heights City Sch. Dist. v.   Boss*, 144 F. 3d 391, 400 (6th Cir., 1998).

83. In *Florence*, the Court refused to bar reimbursement because the private placement did not comply with FAPE requirements of IDEA. The Court reasoned that imposing such requirements on private placements would "eliminate the right of unilateral withdrawal recognized in *Burlington*."*Id* at 13-14.

84. When examining whether a unilateral placement is appropriate, it is not to the exclusion of residential Programs. *J.D., by his Parent, J.D., v. Pawlet Sch. Dist.*, 224 F.3d 60, 70 (2nd Cir. 2000).[11] Here, the residential program at Gow was appropriate. Dr. Thomas' report called for a residential program (D-25, pp. 8, 13) and he was on the opinion that the Gow residential program was appropriate for B.B. (T:1039-1044, 1354, 1476, 150-11). The educators from Gow also testified that the residential component of their program was appropriate for B.B. (T: 1363-164).

---

[11] Also see, 34 U.S.C. §104.33(c)(3) and (4)

85. While Gow did not have any regular education students, there were ample opportunities for community involvement and interactions with regular education students (T:1363-4 and 1383).

86. Plaintiffs have provided unrebutted testimony and documentary evidence showing that Gow was an appropriate residential placement. Id. 71-72. B's placement at Gow is not a violation of the LRE provisions of the IDEA. Gow provided an appropriate program to B.B. for the 2011-12 and 2012-13 school years.

## CLAIM IV
## EQUITABLE CONSIDERATIONS FAVOR PLAINTIFFS

87. Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein. Claim XIV is asserted solely against the Defendant BHCSD and not the State Defendants.

88. Since the IHO and SRO found that BHCSD provided an appropriate program in the 2011-12 and 2012-13 school years, they did not reach the determination of equitable considerations. Based on the parents' cooperation with the District and the District's failure to cooperate with the parents, as evidenced in its retaliation and spoliation of educational records, the equities weigh in Plaintiffs' favor.

89. Since the power to grant reimbursement is discretionary, "equitable considerations [relating to the reasonableness of the action taken by the parents] are relevant in fashioning relief." *Burlington* at 374; *Frank G.* at 367.

90. The United States Supreme Court has stated that 20 U.S.C. §1412(a)(10)(C)(ii),(iii) and (iv), requires that the notice provisions be read permissively. *Forest Grove* at 2493.

91.   Here, notice was accomplished because of Plaintiffs' cooperative and informative behavior. After deciding to unilaterally place B.B. at Gow for the 2011-2012 school year, Plaintiffs sent an official notice to BHCSD in dated August 17, 2011, received by their office on August 22, 2011, stating that they were withdrawing B.B. from BHCSD (D-23).

92.   Plaintiffs could not have been more vigilant in seeking an in-district program, but, unfortunately, there was no program at BHCSD that was appropriate for B.B.'s needs.

93.   The hallmark of the equitable consideration analysis is whether the parents cooperated with the school district. *Forest Grove*; *N.R. v. Dep't of Educ. Of the City Sch. Dist. of N.Y.*, 2009 U.S. Dist LEXIS 27273, *16 (S.D.N.Y. Mar. 31, 2009); *E.S.* at 431.

94.   From the very beginning of Plaintiffs' experience with BHCSD, they provided reports and documentation, attended CSE meetings, and communicated with teachers and administrators.

95.   The United States Supreme Court in *Forest Grove* infers a give and take in the balancing of the equities. The equitable analysis is "premised on a history of cooperation and encourage school districts and parents to continue to cooperate in developing and implementing an appropriate IEP before resorting to a unilateral private placement."

96.   In balancing the equities in the instant matter, there can be no question that Plaintiffs cooperated with Respondent. Plaintiffs communicated with BHCSD and attended all CSE meetings throughout the years to try and establish an appropriate program for B.B. at BHCSD. However, BHCSD was uncooperative with Plaintiffs, as evidenced by its retaliation against Plaintiffs by reporting them the CPS.

97.     The fact that Plaintiffs strongly advocated their position regarding a residential program for B.B. does not mean that they in any way were uncooperative and/or obstructive in their efforts to secure a FAPE for their son. *E.S.* at 445.

98.     The District's egregious and outrageous conduct in falsely reporting Plaintiffs to CPS could not be further from cooperation. Plaintiffs suffered emotional harm and felt as though they were being targeted by the District. Rather than cooperating with the Parents in their loving efforts to help their child receive an appropriate education, the District retaliated against them simply for advocating for B.B.'s right to a FAPE.

99.     Plaintiffs brought an action against the District for its false and retaliatory report to CPS. *HB, et al, v. Byram Hills Union Free School District, et al,* Docket No. 7:14-cv-00338-CS. The Defendants in that case moved to dismiss and, after a hearing before Judge Seibel on March 23, 2015, Plaintiffs survived the motion to dismiss.

100.     In light of the retaliation and spoliation of records by BHCSD, further discussed below, and the cooperative behavior of Plaintiffs, Plaintiffs have met their burden of equitable considerations, and have thus satisfied the *Burlington* test for reimbursement.

## CLAIM V
## BHCSD RETALIATED AGAINST PLAINTIFFS BY FALSELY REPORTING THEM TO CPS

101.     Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein. Claim XV is asserted solely against the Defendant BHCSD and not the State Defendants.

102.     The IHO erred in failing to address Plaintiff's claim of retaliation (IHO Dec. 19-20).

103. The original IHO erred in excluding evidence concerning BHCSD's retaliation and the IHO Decision is in error for refusing to consider Plaintiffs' arguments regarding same (IHO Dec. 20).

104. Further, the SRO is in error for refusing to consider Plaintiffs' arguments regarding their claim of retaliation against BHCSD.

105. Plaintiffs brought an action against the District for its false and retaliatory report to CPS. *HB, et al, v. Byram Hills Union Free School District, et al,* Docket No. 7:14-cv-00338-CS. The Defendants in that case moved to dismiss and, after a hearing before Judge Seibel on March 23, 2015, Plaintiffs survived the motion to dismiss. The case is currently pending before Judge Seibel in the Southern District of New York.

106. Section 504 of the Rehabilitation Act, 29 U.S.C. 701 et seq., prohibits School Districts that receive federal funds from retaliation, intimidation, threats, or coercion against any individual for the purpose of interfering with any right or privilege secured by the statute or the Title VI regulation, or because the individual has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VI regulation. 34 C.F.R. Section 100.7(e).

107.  Courts routinely consider Section 504 claims in conjunction with IDEA claims and hold that "Plaintiffs can rely on Section 504 to claim that they are denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive, if they can show defendants acted with bad faith or gross misjudgment in the administration of disability services." *S.W. v. Warren*, 528 F. Supp. 2d 282, 290 (S.D.N.Y. 2007). Here, BHCSD acted in bad faith by retaliating against Plaintiffs. The retaliation claim can be considered in conjunction with the IDEA claim.

108. The elements of a retaliation claim under Section 504 are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002).

109. BHCSD receives federal funds subject to § 504 of the Rehabilitation Act, and therefore, must comply with its provisions against retaliation. There is no limitation under the regulation that retaliatory acts are only prohibited against the handicapped individual on whose behalf the Section 504 complaint is being raised. See 29 U.S.C. Section 794.

110. Plaintiffs in this case are similarly situated to Plaintiffs in *Weixel*, as (1) they engaged in an activity, namely advocating for B.B. pursuant to the IDEA and Section 504, protected by the ADA and the Rehabilitation Act; (2) the defendants were aware of this activity; (3) the defendants took adverse action against plaintiffs by falsely reporting Plaintiffs to Child Protective Services ("CPS"); and (4) a causal connection exists between the alleged adverse action and the protected activity, namely that within days of Plaintiffs demanding tuition reimbursement, BHCSD reported them to CPS. *M.A. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 185534, 47-48 (S.D.N.Y., 2013); *Weixel* at 148.

111. BHCSD knew they were engaging in protected activity and, nonetheless, retaliated against them by falsely reporting Plaintiffs to CPS.

112. On March 15, 2013, without articulating a reason, BHCSD objected to the admission of evidence relating to the unfounded charge of child abuse to CPS by BHCSD personnel. Presumably, BHCSD believes that such matters are confidential as it concerns the School District, and that the School District should be immune to Plaintiffs' allegation of

retaliation. However, confidentiality on behalf of the reporter of child abuse does not extend to those that report in bad faith.

113. BHCSD does not enjoy statutory immunity when its false report of child maltreatment was done with malice and was retaliatory. "[T]he sealing of DSS unfounded reports is meant to shield those falsely accused of child abuse or neglect, not those individuals accused of knowingly making false accusations with SCR. ... It certainly does not apply to privacy regarding matters which are unethical or criminal in nature." *People v. Berliner*, 179 Misc. 2d 844, 851 (N.Y. City Ct. 1999).

114. Plaintiffs' claim of retaliation "falls within the ambit of the IDEA," because their DEA and retaliation claims "arise out of the same facts and circumstances."

115. The exhaustion requirements under IDEA have been applied to actions claiming violations of Section 504 of the Rehabilitation Act. *B. v. Board of Education*, 535 F. Supp. 1333, 1337 (E.D.N.Y. 1982). Thus, Plaintiffs were required to present evidence of BHCSD's false and malicious report of child abuse to CPS at the impartial hearing. *R.S. v. Bedford Cent. Sch. Dist.,* 2011 U.S. Dist. LEXIS 41573, 10 (SDNY, 2011). However, IHO denied all evidence regarding the CPS charge and Plaintiffs had to seek redress on this issue from the SRO. See 42 U.S.C. Section 1983. The SRO refused to consider this issue and Plaintiffs now must seek redress from this Court.

116. "The core purpose of Section 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.'" *Felder v. Casey,* 487 U.S. 131, 141 (1988).

117. Plaintiffs were reported to CPS after the first 2012-13 CSE meeting. The Second CSE meeting occurred in August 2012, after the family was reported. Plaintiffs felt they were a target. By reporting Plaintiffs to CPS, BHCSD was being uncooperative, which weighs

against BHCSD in Prong 3 of the tuition reimbursement test, the balancing of the equities. *Burlington* at 370. Plaintiffs have shown that the IHO erred in failing to address the issue of BHCSD's retaliation against Plaintiffs.

### CLAIM VI
### BHCSD ENGAGED IN SPOLIATION BY DESTROYING SPECIAL EDUCATION RECORDS

118. Plaintiffs reiterate, repeat, and reaffirm each and every allegation set forth above as if fully set forth herein. Claim XVI is asserted solely against the Defendant BHCSD and not the State Defendants.

119. The IHO erred in determining that the underlying record "contains no evidence of intentional destruction of documents in anticipation of litigation in this case." (IHO Dec. 24).

120. BHCSD spoliated documents regarding BB, in contravention of State regulations governing the retention of a student's educational record (see 8 NCYRR 185.12, Appendix I [Schedule ED-1] at pp. 100-01[1.(267)(b)] [districts are obliged to retain special education records, including "parent communication" and "agency communication," for a period of six years]; see also id. at p. xiii [e-mail records are to be treated the same as records in other formats]).[12] The District's spoliation of records is a serious procedural violation and, when taken together with all other egregious conduct by the District in this case, amounts to unconscionable behavior.

---

[12] It should also be noted that the violations under ED-1 in the form of spoliation are procedural violations that prevented the parents full participation in forming BB's IEPs and obtaining FAPE for BB. *Rowley* at. This conduct also prevented parents from being able to fully prepare for this IH and it further prevented their ability to confront factual and legal arguments made by Respondent.

121.    The Second Circuit and New York courts have long recognized, and imposed sanctions in connection with, actions relating to the destruction of evidence.   The Second Circuit defined spoliation as "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2nd   Cir. 1999). (A-2921).

122.    Spoliating evidence pertinent "to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). This sanction serves a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation. See *West*, 167 F.3d at 779.

123.    A court will impose sanctions for spoliation where, as here: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a 'culpable state of mind' and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) ("Zubulake V") (A-2922).

124.    At the summary judgment stage, "an inference of spoliation, in combination with some (not insubstantial) evidence" can allow a plaintiff to survive summary judgment. *Byrnie v.*

*Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (internal citations and quotations omitted).    As described below, Appellants more than meet this burden.

125.    BHCSD destroyed, or allowed to be destroyed, relevant documents related to the progress of BB. As a disabled student bringing suit under New York State Education Law, BB is within the general class of persons protected by the regulations promulgated by the New York State Education Department, including the Retention Regulations at issue.    Further, as a public school district responsible for the safekeeping of the educational records of its students, BHCSD is subject to New York State requirements regarding when it may destroy such records and under what circumstances.

126.    According to ED-1, §1.267[b], BHCSD had an obligation to retain BB's records for six (6) years.    Furthermore, email retention rules should be read in conjunction with ED-1, §1.267[b], making the retention period six (6) years for relevant emails.    Moreover, in declaring that the records should be "retained for the minimum retention established in the Schedule . . . [in anticipation of a] . . .legal action or audit," ED-1 adopts the philosophy of spoliation in the Second Circuit.

127.    As BB's teachers shredded documentation of the BB's progress, behaviors and academics, these documents could not be shared by teachers from one school year to the next.

128.    When asked if she had a chart and what she did with it Kim Costello, BB's resource room teacher, testified, " [a]t the end of the year we shred what we don't need for the next year." (T:424). Ms. Costello also testified, "I guess I would start from scratch." (T:424).

129.    Ms. Sapone, BB's 7th grade math and science teacher also testified that the data she would collect as an educator in her classroom, as far as what was going on and   notes, was all shredded at the end of the year. (T:344-345). This practice was detrimental to any chance

of BB's success as future teachers could not see and compare BB's work from the previous year.

130.    As further evidence of the ongoing spoliation and asinine hiding of documents engaged in by the District Defendant, BHCSD's counsel purposely failed to disclose the complete hearing record to the OSR upon Plaintiff's initiation of the appeal to the SRO, as required by law. 8 NYCRR 279.2(a). BHCSD's counsel intentionally left out exhibits that were a part of the hearing record in an attempt to hold back information regarding BHCSD's retaliatory CPS report. This holding back of information is another example of the spoliation conduct engaged in by the District Defendant.

## **RELIEF REQUESTED**

131.    Accordingly, by reason of the foregoing, this Court should

    a.    Conduct a modified de novo review of the record before the IHO and SRO, including:

        i.    Plaintiffs' (Petitioners) Post Hearing Brief, dated August 13, 2013

        ii.    Defendant BHCSD (Respondent's) Post Hearing Brief, dated August 13, 2013

        iii.    Plaintiff (Petitioners) Motion to Admit Evidence of CPS Report, dated April 30, 2013;

        iv.    Defendant (Respondents) Opposition to Plaintiff's Motion to Admit Evidence of CPS Report, dated May 15, 2013;

        v.    Plaintiff (Petitioners) Reply to Respondents' Opposition to Admit Evidence of CPS Report, dated May 24, 2014;

    vi.    Plaintiff (Petitioners') Application for Admission of CPS Evidence and

           Exhibits in the Z.B. v. BHCSD matter (as referenced in Plaintiff/Petitioner's

           May 24, 2014 Reply), dated February 25, 2013;

    vii.    All exhibits entered into evidence at the Impartial Hearing;

    viii.    IHO Freed Decision Denying Plaintiff's Motion to Admit Evidence of CPS

           Report, dated June 3, 2014[13]

b.    Reverse the IHO's arbitrary and capricious decision denying Plaintiffs' Application

    to Admit Evidence of CPS Report, dated June 3, 2014;

c.    In accordance with the hybrid summary judgment standard under *Lillbask ex rel.*

    *Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 (2d Cir. 2005), the provisions

    of the IDEA, and, in particular, 20 U.S. §1415(i)(2)(A):

    i.    Reverse the IHO's arbitrary and capricious decision denying relief for

           Plaintiffs regarding the 2011-12 and 2012-13 school years;

    ii.    Reverse the Decision of Justyn P. Bates, State Review Officer, dated

           January 30, 2015, dismissing Plaintiffs' appeal from the IHO's

           Determination and Decision regarding the 2011-12 and 2012-13 school

           years and denying tuition reimbursement for Gow for the 2011-12 and

           2012-13 school years;

---

[13] Plaintiffs will request an Order Sealing the Record before the SRO. Plaintiffs will then supplement the record with said Sealed Record.

d.  Determine that, based on the underlying evidentiary record, Plaintiffs amply meet the applicable standards for reimbursement relief;

e.  Issue an order naming Plaintiffs the "substantially prevailing parties" and granting Plaintiffs leave to file a fee application pursuant to the fee shifting provisions of the IDEIA, 42 U.S.C. §1981; §1985;

o.  Issue an order that the underlying hearing record before the SRO be transferred under seal to this Court; and

q.  Issue an order granting Plaintiffs such other, further and different relief as may be just under the circumstances.

Dated: July 22, 2015
Katonah, NY

Respectfully submitted,
Law Office of Peter D. Hoffman, PC

By: _____

Peter D. Hoffman (PH -8306)
Law Office of Peter D. Hoffman, P.C.
Attorneys for Plaintiffs
200 Katonah Avenue
Katonah, New York 10536
(914) 232-2242          phone
(914) 232-2245          facsimile
 Pdh2@pdhoffmanlaw.com    e-mail