Law Office of Peter D. Hoffman, P.C.
Peter D. Hoffman (PH -8306)
Yifei He (YH -9382)
Attorneys for Plaintiffs
200 Katonah Avenue
Katonah, NY 10536
(914) 232-2242     Phone
(914) 232-2245     Facsimile
yh@pdhoffmanlaw.com E-mail

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **H.B. and T.B., individually and O/B/O B.B.** [1] <br><br>       **Plaintiffs,**<br>  **- against -**<br><br>**BYRAM HILLS CENTRAL SCHOOL DISTRICT,**<br><br>      **Defendant.** | **15 CIV. 05742 (VB)**<br><br>**<u>ORAL ARGUMENT</u><br><u>REQUESTED</u>** |

**PLAINTIFF'S RESPONDING STATEMENT AND COUNTERSTATEMENTS TO THE
DEFENDANT'S RULE 56.1 STATEMENT**

---

[1] Plaintiffs are not expressly named herein by their given names because of the privacy guarantees provided in the IDEA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 (hereinafter "FERPA"). All student parties and actors herein are listed by pseudonym. This is done to protect their privacy pursuant to and in the spirit of FERPA. Whereas this action will require the inspection of student records of all student parties herein, Plaintiffs herein seek to protect the identity of all listed student parties by using pseudonyms.

Plaintiffs, HB and TB, individually and on behalf of BB, in opposition to the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits the following responding statement and counterstatements to the Defendant's Rule 56.1 Statement in Support of Motion for Summary Judgment.[2]

Background

1.      Defendant Byram Hills Central School District (hereinafter the "School District"), is a governmental body with obligations pursuant to 20 U.S.C. §1413 and New York State Education Law §4402 to assure a free appropriate public education to students with disabilities who reside within the geographical area of the Byram Hills Central School District. Complaint at 3.

**Response: Admit.** [3] **But, as will be shown below, it is Plaintiffs' position that the Defendant Byram Hills Central School District (hereinafter "BH") did not assure BB a Free and Appropriate Education, (FAPE). Plaintiffs are entitled to reimbursement for compensatory services in light of the School District's failure to provide a FAPE for the 2010-12 school year (IHO Dec. 25).**

2.      Plaintiffs are H.B. and T.B. (hereinafter "Parents"), Parents of BB who is the subject of this proceeding (hereinafter "BB" or "Student"). Complaint at 1.

**Response:      Admit**

---

[2] Defendant's statements appear below, with Plaintiffs' responses and counterstatements following each statement in **bold**.
[3] References are to the Certified Administrative Record filed with the Court, including School District Exhibits, cited as "D -," Parents' Exhibits, cited as "P Exhibit _,"the Hearing Transcript, cited as "T. _," Impartial Hearing Officer Exhibits, cited as "IHO _," the Decision of the Impartial Hearing Officer, cited as "IHO _," the Decision of the State Review,  cited as "SRO _,"the First Amended Complaint, cited as "CPT". Documents contained in the Docket, cited as "DKT." Petitioner's Post Hearing Brief, cited as ""PPHB." Plaintiff's State Review Office Petition, cited as "PSRO."

3.    At all relevant times, Student and his Parents have resided within the Byram Hills School District. Complaint at 1.

**Response:    Admit**

4.  At all relevant times, Student has been classified as Learning Disabled. SD 13, SD 40, p. 10

**Response:    Admit. But, as will be shown below, the Defendants have routinely failed to appreciate the severity of BB's disabilities.**

5.  At all relevant times, Student had behavioral and management issues which impeded his learning. SD 13, p. 8; SD 40, p. 10.

**Response and Counterstatement:    Admit that BB had behavioral and management issues which impeded his learning. But aver that, Parents and Defendants disagree as to the root cause of these behaviors and the method to address these behaviors. Parents emphasize that the report by Dr. Thomas correctly evaluates BB's inherent problems as educationally related on not therapeutic. SD, See Rule 56. 1 Statement, (Dkt. 25), ¶¶66-76, T:1033-1034. Whereas District maintains its own institutional analysis of BB addresses the problems faced by BB. SD 13, p. 8. SD 40, p. 10.**

Procedural Background

6.  On October 5, 2012, Parents filed a Due Process complaint against the School District, alleging that the School District failed to offer BB a Free and Appropriate Public Education ("FAPE") for the 2010-2011, 2011-2012 and 2012-2013 school years. IHO Exhibit 1.

**Response:    Admit. A decision of the Impartial Hearing Officer, IHO, was not rendered until October of 2014, nearly two years later and only after Plaintiffs were**

3

compelled to file an action in federal court seeking an IHO and an SRO decision. *HB, et al. v. BHUFSD, 14-cv-5797 (VLB).*

7. Parents sought compensatory damages for the 2010-2011 school year, and tuition and related costs at the Gow School, a private residential school located in Buffalo, New York for the 2011-2012 and 2012-2013 school years. IHO Exhibit 1.

**Response:** **Admit that these were just some of the Demands Parents sought. Also aver that, Parents sought an Order granting Petitioners prevailing party status. An Order finding that Respondent's 2010-11, 2011-12 and 2012-13 LEPs were not appropriate. An Order finding that the Gow School is an appropriate placement for BB. Attorneys' fees and costs. IHO Exhibit 1.**

8. An impartial hearing convened on January 7, 2013 and concluded on June 4, 2013 after ten days of hearing. Tr. 1-1603.

**Response:** **Admit. See ¶6**

9. On the final day of hearing, Parents rested their case at 11:30 a.m. Tr. 1597, 1603.

**Response:** **Admit that the Parents rested their case at 11:30 am. But aver that the Hearing spanned a period of five months from January to June of 2013. In addition, IHO Freed denied the Plaintiffs the ability to complete their case. This was especially so as it concerned school psychiatrist Randall Ross. Dkt. No. 25, ¶4.[4]**

10. IHO Dolores Freed presided over the entire ten day hearing. Tr. 1-1603.

**Response:** **Admit that IHO Freed was present at the ten day hearing. But deny that IHO Freed "presided" over the ten day hearing. Aver that:**

---

[4] Randall Ross, MD, BB's treating psychiatrist, and the school psychiatrist in the Larchmont School District.

    i. **The ten-day Hearing spanned a period of five months from January to June of 2013. Tr. 1-1603.**

   ii. **Freed was removed as the IHO for present and all future hearings at the Board of Education for failure to render a decision within the proscribed time limits. IHO Exhibit 3.[5]**

  iii. **IHO Freed displayed bias in favoring of District over Plaintiffs. T: 20-21. PPHB 3.**

  iv. **IHO Freed had difficulties keeping up with the exhibits, reading time, hearing witnesses and counsel speaking, and displayed indeterminable pauses where she often failed to make rulings during the hearings. T: 1182-1183, 1139. PPHB 3. PSRO 3.**

11. Dolores Freed was removed as the IHO in this matter by the New York State Department of Education by letter dated April 10, 2014 for failure to render a decision within the proscribed time limits. IHO Exhibit 3.

    **Response:**    **Admit. Also aver that:**

    i. **Freed was removed as the IHO for present and all future hearings at the Board of Education. IHO Exhibit 3.**

   ii. **IHO Freed displayed bias in favoring of District over Plaintiffs. Tr. 20-21. PPHB 3.**

  iii. **IHO Freed had difficulties keeping up with the exhibits, reading time, hearing witnesses and counsel speaking, and displayed indeterminable pauses where she**

---

[5] IHO Exhibit 3 is solely the Order removing IHO Freed. The application sought for her removal and the supporting papers should be in the record that was sent to the Court from the SRO's office. The Defendants did not submit any papers or opposition to the Plaintiffs application for removal. Plaintiffs' arguments concerning the conduct and utter lack of competence and the impact on record caused by IHO Freed remains unrebutted by the SRO and the Defendants.

often failed to make rulings during the hearings. Tr. 1182-1183, 1139. PPHB 3. PSRO 3.

12. On October 15, 2014, IHO Jean Lucasey issued a 30 page decision holding that the District had provided BB with FAPE for the 2011-2012, and 2012-2013 school years. IHO Decision at 26, 29.

**Response: Admit that this Decision was issued by IHO Lucasey on October 15, 2014. However, aver that:**

 i. **The Decision is a nullity due to various procedural abnormalities. PSRO 2.**

 ii. **It took over a year to receive an IHO decision, (IHO Lucasey's Decision). This is well over statutory limits. 8 NYCRR 2005.(j)( 5). PSRO 3. IHO Lucasey was also late in her decision by her own timeline and the 45 day time line contemplated by the regulation.**

 iii. **There have been four IHO's in this case. The initial IHO was removed from her position for her failure to complete and issue a Decision. PSRO 3.**

13. IHO Lucasey also determined that the District failed to provide student a FAPE for the 2010-2011 school year and as relief ordered the District to reimburse parents for the cost of tutoring services they procured for student during the 2010-2011 school year and for the cost of student's attendance at Eagle Hill during the summer 2011 in the amount of $1,000. IHO Decision, pp. 25, 29.

**Response: Admit.**

14. Parents appealed to the State Review Office ("SRO") from that part of IHO Lucasey's decision which found that the District had provided Student a FAPE for the 2011-2012 and 2012-2013 school years. SRO Decision, p. 5.

**Response:** Admit and aver that Parents sought review of the Findings of Fact, Decision, and Order of Impartial Hearing Officer Jean M. Lucasey, Esq., dated October 15, 2014, concerning the identification, evaluation, program, and/or placement of Student BB for the 2011-12 and 2012-13 school years. PSRO p. 1. Parents also aver that the IHO's decision is a nullity due to various procedural abnormalities throughout the impartial hearing process. PSRO p. 2, ¶ 5.

15. The School District responded to Parents appeal and cross-appealed to the SRO from that part of IHO Lucasey's decision which found that the District had not provided student with a FAPE for the 2010-2011 school year. SRO decision, p. 5.

    **Response: Admit.**

16. On January 30, 2015, the SRO affirmed IHO Lucasey's decision. SRO Decision 1-17.

    **Response: Admit the SRO affirmed IHO Lucasey's decision that the District had not provided student with a FAPE for the 2010-2011 school year. Also aver that:**

    i. **Plaintiffs seek Federal *modified de novo* Review of the 2011-12, 2012-13 year findings because administrative remedies have been exhausted under New York State's administrative procedures. DKT 24 p. 1. Courts must refrain from deferring to the SRO's conclusions if the findings of the SRO are unsupported. *E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ. 2012).**

    ii. **Plaintiffs disagree with the IHO and SRO and assert that BH failed to offer a FAPE to BB for the 2011-12 and 2012-l3 school years. DKT 24 p. 4.**

2011-2012 School Year

17. The School District convened an annual review on March 23, 2011 to develop a program for BB for the 2011-2012 school year and to modify the May 2010 IEP. Tr. 81-82; 88-89; SD 12, pp. 1-2; 13, p. 1; SRO Decision, p. 3.

**Response: Admit**

18. At the March 23, 2011 meeting, Parents expressed concern about BB's reading. SD 13, p.2.

**Response: Admit that Parents expressed concern about BB's reading. However, aver that this paragraph does not include other concerns by Parents of BB. In particular:**

   i. **Mrs. Brois indicated that the school is not meeting BB's needs. SD 13, p.2;**

   ii. **Mrs. Brois indicated that BB is not functioning on a 7th grade level. SD 13, p.2;**

   iii. **Mrs. Brois indicated that BB is not part of the social mainstream and only befriends students in his special classes. SD 13, p.2; and**

   iv. **As shown in the IEP, SD 13, p.2, this CSE Meeting was recorded and is part of the record. P-NN.**

19. At the March 23, 2011 meeting, BB's 2010-2011 IEP was amended to add multisensory reading support to BB's program for 45 minutes per day to begin in April, 2011 and to continue for the remainder of the 2010-2011 school year. Tr. 87-80; SD 12, p. 3; SD 13, p. 1; SRO Decision, p. 3.

**Response: Admit that the 2010-2011 IEP was amended in April 2011 to include multisensory reading support until June 2011. Tr. 87. However, aver that:**

   i. **The IHO ultimately found, and the SRO upheld, the District to have failed to provide BB with a FAPE for the 2010-11 year. IHO 25. SRO 7.**

8

ii. **The parents objected to the 2010-11 IEP's effectiveness and appropriateness. Tr. 88-89. There was no FBA or BIP in place. Tr. 388-89; 751-52. The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year. Tr. 331, 332. PPHB 10-11. Furthermore, BB was non-compliant with the Program from session one. Tr. 605-607, P-NN.**

20. At the March 23, 2011 meeting, the CSE created an IEP for BB for the 2011-2012 school year. SD 13; SRO Decision, p. 3.

**Response: Admit that the CSE created an IEP for BB for the 2011-12 school year. However, aver that:**

i. **The parents objected to the program's effectiveness. Tr. 88-89. The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year. Tr. 331, 332. D-13. PPHB 10-11. BB was not part of the social mainstream. Tr. 1284-85. BB needed to be with peers with similar disabilities. Tr. 1285. BB was non-compliant with the Program from session one. Tr. 605-607. BB was consistently failing every class year after year. Tr. 1216, 1290.**

ii. **No FBA had been implemented in either the current or the preceding school years. Tr. 238-39; 606-07. 1162, 1220-21. As a matter of fact, no FBA was ever discussed, let alone implemented by the District. T, 1287.**

iii. **The Districts' proposal for reading did not come close to achieving the level of services recommended by Dr. Thomas or other experts in this field. D 25, p.17. These recommendations were based on application of proven scientifically-**

9

based remedial strategies, for those suffering from multiple learning disabilities, dyslexia and ADHD, similar to BB. Tr. 1052-53. D 25, p. 8. PPHB 12-13.

21. The CSE recommended a 15: 1 special placement for academic subjects, resource room services, and related services consisting of multisensory reading support in a small group for 45 minutes daily, and individual counseling once per week for 30 minutes. SD 13, pp. 1; 12; SRO Decision, p. 3.

**Response: Admit this paragraph accurately cites from the CSE's recommendations. However, aver that:**

   i. **The parents objected to the program's effectiveness. Tr. 88-89. The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year. Tr. 331, 332. D-13. PPHB 10-11. BB was not part of the social mainstream. Tr. 1284-85. BB needed to be with peers with similar disabilities. Tr. 1285. BB was non-compliant with the Program from session one. Tr. 605-607. BB was consistently failing every class year after year. Tr. 1216, 1290.**

   ii. **No FBA had been implemented in either the current or the preceding school years. Tr. 238-39; 606-07. 1162, 1220-21. As a matter of fact, no FBA was ever discussed, let alone implemented by the District. T, 1287.**

   iii. **The Districts' proposal for reading did not come close to achieving the level of services recommended by Dr. Thomas or other experts in this field. D 25, p.17. These recommendations were based on application of proven scientifically-based remedial strategies, for those suffering from multiple learning**

10

disabilities, dyslexia and ADHD, similar to BB. Tr. 1052-53. D 25, p. 8. PPHB 12-13.

22.     The IEP also identified that BB needed strategies, including a behavioral intervention plan to address behaviors that impeded BB's learning. SD 13, p. 8.

**Response:** **Admit this paragraph accurately cites the IEP's identifications. But aver that:**

i. **There was neither a discussion of a BIP nor a FBA at the IEP Meeting. Neither the BIP nor FBA was mentioned in the Comments Section of the IEP. Tr. 1286-87. No FBA was ever implemented by the District. Tr 238-39, 606-07, 1162, 1220, 1287.**

ii. **The parents objected to the program's effectiveness. Tr. 88-89. The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year. Tr. 331, 332; 1285. PPHB 10-11. BB was not part of the social mainstream. Tr. 1284-85. BB needed to be with peers with similar disabilities. Tr. 1285. BB was consistently failing every class year after year. Tr. 1216, 1290.**

23.     The IEP identified five goals to address BB's social/emotional and behavioral needs. SD 13, pp. 10-11.

**Response:** **Admit this accurately cites the IEP's identifications. But aver that:**

i. **From the outset, the parents objected to the program's effectiveness. Tr. 88-89. BB was consistently failing every class year after year. Tr. 1216, 1290. BB was not part of the social mainstream. Tr. 1284-85. BB needed to be with peers with similar disabilities. Tr. 1285. Parents did not know what the clear-cut reading**

program was going to be and what the methodology was in the IEP. Tr. 1285. The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year. Tr. 1285. D-13. PPHB 10-11.

ii. District's proposed 2011-2012 programs were not at the level of Dr. Thomas' expert recommendations or other experts in this field, D 25, p. 13, which were based on application of proven scientifically-based remedial strategies, for those suffering from multiple learning disabilities and ADHD. Tr. 1052-53. D 25, p. 8. PPHB 12-13.

The IEP was inappropriate for BB, given his high level of disability. Tr. 1049. Given BB's chronic failure, Tr. 1033, Dr. Thomas specifically recommended that BB skip the continuum of services to the most intensive, the most comprehensive services, to make sure that BB gets on track as quickly as possible. Tr. 1034. Dr. Thomas believed that BB's evaluation revealed that BB's disability affected BB's capacity to participate within an academic environment. Tr. 1031. The required program had to be very much specialized and oriented towards BB's reading disability and remediate his language issues. Tr. 1034. BB needs an environment in which the classroom experience complements and adds to the individual remediation. Tr. 1035.

24.     The IEP included supplementary aids to manage BB's behavioral issues including preferential seating, positive reinforcement plan, and refocusing and redirection. SD 13, p. 13.

**Response:** See Response # 23.

25. To further support BB's needs, the IEP included management strategies, program modifications and accommodations and testing accommodations. SD 13, p. 13; SRO Decision, p.3.

> **Response: See Response # 23. Additionally, aver that: Parents objected to the Program in not being specific to BB's disability. Tr. 1285. Dr. Thomas objected to the Program as being much less than would be required. The frequency and intensity of the services are inadequate. Tr. 1049-1050. Any supplemental assistance would also be inadequate. Tr. 1051. Any modifications to the Program are largely unchanged from previous Programs. Tr. 1051-54.**

26. The CSE discussed completing an FBA during the 2011-2012 school year because it would be a "different environment in a different year with different grade level expectations." Tr. 90-92, 237-238.

> **Response: Disputes the accuracy of the facts set forth in paragraph 26. Plaintiffs aver that such discussion of a FBA was never implemented Tr 238-39, 606-07, 1162, 1220, 1287. D-13. Furthermore, any discussion was stricken from the record as unsupported. Tr. 91-92.**

27. Parents started looking at private school placements for BB in the Spring of 2011. Tr. 1265-1266.

> **Response: Admit. The parents were compelled to seek alternatives to BB's education by the Spring of 2011, he was failing (Tr. 471-73; 488 – 89; 1215-16; 1258; 1276; 1290; 1293), he could not read at an appropriate level (Tr. 589; 1215-16; 1258; 1265; 1293) and he was socially isolated (Tr. 1183-84; 1284; P-NN) and the District had failed to provide reasonable alternatives.**

13

28.     As early as March, 2011, Parents were considering sending BB to the Gow school for the 2011-2012 school year. P A, B.

**Response: Deny that Parents considered sending BB to the Gow School. Admit only that Parents began to think about applying to the Gow School in March, 2011. Tr. 1215-16; 1293; P A, B.**

29.     In April 2011, Parents applied for BB to attend the Gow School. Tr. 1313, P BB.

**Response: See Response # 27.**

30.     The Gow School is a residential boarding school located near Buffalo, New York. PEE, pp. 1, 3.

**Response: Admit. Also aver that a Residential Boarding School is in line with Dr. Thomas's Recommendation and Report. Tr. 1036-37.**

31.     The Parents did not inform the CSE at the March 23, 2011 meeting that they had applied to Gow for BB. Tr. 1590.

**Response: Admit but aver that the School District did not ask the Parents about any other schools, including Gow, at any time. Tr. 1590. Also aver that Parents did not tell Dr. Thomas about the Gow School. Tr. 1592. Moreover, no decision had been made on Gow specifically. Tr. 1590; 92.**

32.     On August 17, 2011 the Parents notified the District that they rejected the IEP and would be sending BB to Gow for the 2011-2012 school year and seeking costs of tuition and related costs. SD 23; SRO Decision, p. 3.

**Response: Admit Parents rejected the IEP as inappropriate. SD 23. Aver that Parents believed BB's education at the District was a complete failure and that BB was learning absolutely nothing. Tr. 1215-16.**

14

33.     On September 12, 2011, the Parents sent the District the results of a private psychological evaluation conducted in July 2011. SD 25.

**Response: Admit and aver that this report, "strengthens the beliefs that the services they [the District] offered were not appropriate and were not designed to meet [BB']s needs." SD 25. As a matter of fact, Dr. Thomas evaluated BB in July, 2011. Dr. Thomas objected to the District's Program as being much less than would be required. The frequency and intensity of the services are inadequate. Tr. 1049-1050. Any supplemental assistance would also be inadequate. Tr. 1051. The Program would not come close to meeting Dr. Thomas's recommendations. Any modifications to the Program are largely unchanged from previous Programs. Tr. 1051-54.**

34. Parents did not request a program review when they sent the report. SD 25, Tr. 113.

**Response: Disputes the accuracy of the facts set forth in paragraph 34. Plaintiffs aver that Plaintiffs did not request a program review from Mr. Stowell on September 12, 2011. It was Mr. Stowell who subsequently sent out the report to Karen Kushnir, who is solely responsible for students who are placed out of district. Tr. 113.**

35. BB attended Gow for the 2011-2012 school year. Tr. 1142-43; P CC, DD, KK.

**Response: Admit. Dr. Thomas objected to the Program as being much less than would be required. The frequency and intensity of the services are inadequate. Tr. 1049-1050. Any supplemental assistance would also be inadequate. Tr. 1051. The District's Program would not come close to meeting Dr. Thomas's recommendations. Tr. 1052. Gow, on the other hand, was in line with Dr. Thomas's recommendations and appropriate for BB. Tr. 1039; 1042-43; 1055-56.**

36. Gow has not been approved by the Commissioner of Education as a school with which school districts may contract for the instruction of students with disabilities. SRO Decision, p. 4, footnote 3.

**Response: The allegations in paragraph 36 are argument, rather than statements of material fact, and should, therefore, be disregarded by the Court and deemed disputed. Complaint, Dkt No. at 19-20. *Florence County School District Four* v. *Carter,* 510 U.S. 7, 7 (1993). PPHB 15-16. Further Aver that the Gow School has an extraordinary track record of student success. P EE.**

2012-13 Year

37. On April 26, 2012, the District sent parents a Notice requesting information about BB's placement to help in developing an IEP for BB for the 2012-2013 school year. SD26, p.2.

**Response: Admit only that the District sent parents a Notice on April 26, 2012. Aver that: The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year; including this year. Tr. 1285. PPHB 10-11. PSRO 10-11.**

38. On May 4, 2012, the District sent a meeting notice to the Parents scheduling a CSE meeting for June 7, 2012 to develop BB's program for the 2012-2013 school year. SD 27.

**Response: Admit only that a meeting notice to the Parents were sent to schedule a CSE. Aver that: The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year; including this year. Tr. 1285. PPHB 10-11. PSRO 10-11.**

16

39. On May 14, 2012, the District sent Parents a second notice requesting information about BB's private placement and requesting consent to contact Gow in order to develop an IEP for BB for the 2012-2013 school year. SD 25.

**Response: Disputes this statement of fact because it is unsupported by Defendants' record citation. SD 25. Aver that: The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year; including this year. Tr. 1285. PPHB 10-11. PSRO 10-11. Moreover, the District asked for Gow records late into the School Year in June. Tr. 893; SD 37.**

40. On May 30, 2012 the District sent out a third notice requesting information about BB's private placement and requesting consent to contact Gow in order to develop an IEP for BB for the 2012-2013 school year. SD 29, SD 32.

**Response: Admit only that the District sent out requests for information about BB's private placement on May 30, 2012. SD 29, 32. Aver that: the parents provided Gow materials for the CSE to review and that people from Gow were on the phone. SD 40, 41.**

41. Parents provided consent on June 5, 2012 but only for a limited time period. SD 33.

**Response: Admit only that the Parents granted consent to the Committee on Special Education to "exchange all pertinent and confidential information" with Gow. SD 33. Avers that Parents granted the District Consent to observe BB at Gow on multiple instances at the District's request. SD31; SD 33; SD 37. Furthermore, the**

17

**District only requested consent late into the School Year. Tr. 952. The District obtained all records in time for the CSE meeting. Tr. 953. SD 40, 41.**

42.     At the time the District received consent on June 5, 2012, Jeff Sweets, the named contact at the Gow School was on vacation and unavailable to provide information for the June 7, 2012 CSE meeting. SD 35.

> **Response: Admit only that Mr. Sweets was unavailable for the week of June 4, 2012. SD 35. Avers that Parents granted the District Consent to observe BB at Gow on multiple instances at the District's request. SD31; SD 33; SD 37. The District only requested consent late into the School Year. Tr. 952. The District obtained all records in time for the CSE meeting. Tr. 953. SD 40, 41.**

43. On June 7, 2012, the CSE convened and held an annual review for BB for the 2012-2013 school year. SD 27; 40, p. 2.

> **Response: Admit that the CSE convened on June 7, 2012. Also aver that: The parents provided Gow materials for the CSE to review and that people from Gow were on the phone to provide input. SD 40, p. 2; SD 41. The District reviewed the Gow records prior to the IEP. Tr. 138-39; 894-96.**

44.     At no point did Parents provide the District with consent to allow the School District to observe BB at Gow. SD 33.

> **Response: Disputes this statement of fact because it is contradicted by Defendants' record citation. Avers that Parents granted the District Consent to observe BB at Gow on multiple instances at the District's request. SD31; SD 33; SD 37. Moreover, the District had an entire summer to determine if a visit to the Gow was possible and failed to do so before the August 2012 CSE Meeting D 40 and 41. Moreover, the**

combined IEP for June and August 2012, show that Gow representatives were present as were Gow materials, P NN, D 40, p. 2. Kushnir testified that District never asked for an observation of BB at Gow until after they knew Gow was closed for the summer and only at the time of the June 2012 CSE Meeting D 40, p.2, Tr: 951-952.

45. Parents did not permit the School District to speak directly with anyone at Gow. SD 33.

**Response: Disputes this statement of fact because it is contradicted by Defendants' record citation. Avers that Parents granted the District Consent to speak with Gow personnel on multiple instances at the District's request. SD31; SD 33; SD 37. The District only requested consent late into the School Year. Tr. 952. The District obtained Gow records in time for the meeting. Tr. 953, 956. The Gow representatives attended CSE Meetings in June and August 2012, P NN, D 40, p. 2.**

46. Parents had not provided the CSE with any information from Gow that they could review and consider at the June 7, 2012 CSE meeting. SD-40, p.2, P NN.

**Response: Disputes this statement of fact because it is contradicted by Defendants' record citation. Avers that Parents granted the District Consent to speak with Gow personnel on multiple instances at the District's request. SD31; SD 33; SD 37, Tr: 915.**

47. At the June 7, 2012 meeting, the CSE considered a report from parents' private psychologist, Dr. Randall Thomas. SD 40 pp. 2, 3, Tr. 896.

**Response: Admit that CSE was presented with a report from Dr. Thomas. Deny that the CSE considered the report by Dr. Thomas. Report. Tr. 1052-53, 1298.**

19

**PSRO p. 6, ¶ 21. The CSE formulated essentially the same IEP as previous years. Tr. 1053.**

48.     The CSE also considered the reading evaluations and parental input at the June 7, 2012 meeting. SD 40, p. 2.

> **Response: Admit only that CSE considered reading evaluations. Disagree that the CSE considered parental input. Tr. 224-26. PSRO ¶ 15.**

49.     The meeting was adjourned until more information could be obtained from Gow regarding student's current program and present levels of performance. Tr. 891-892; SD 40 p. 2.

> **Response: Admit. Also aver that Parents granted the District Consent to speak with Gow personnel on multiple instances at the District's request. SD31; SD 33; SD 37.**

50.     On July 3, 2012, the District received consent to review BB's educational records at Gow until July 31, 2012. SD 37, p.3.

> **Response: Admit and aver that this is the third time the Parents gave consent for the District to review BB's educational records. SD31; SD 33; SD 37. All of this as well as Gow representatives were on the phone at the August 2012 CSE Meeting D 40, p.2.**

51.     On July 13, 2012 the District had still not received any educational records from Gow. SD 45.

> **Response: Disputes this statement of fact because it is unsupported by Defendants' record citation. SD 45. Aver that the Parents gave consent for the District to review BB's educational records from Gow on multiple occasions. SD31; SD 33; SD 37. Moreover, this is meaningless, as ll of this as well as Gow representatives were on the phone at the August 2012 CSE Meeting D 40, p.2, Tr: 915.**

52.     By letter dated July 23, 2012, the District notified the Parents that the rescheduled CSE would be held on August 15, 2012. SD 38.

**Response: Admit**

53.     By letter dated August 9, 2012, Parents notified the District that they were rejecting the IEP, placing BB at Gow for the 2012-2013 school year, and seeking tuition reimbursement. SD 39.

**Response: Admit. The Parents were rejecting the IEP developed and the program offered at the June CSE meeting that had occurred on June 2012 D 40, p.2, and P NN. Additionally, this rejection followed a malicious and retaliatory call to CPS made by the District on or about June 21, 2012. This was vigorously litigated by Parents at the hearing level and at the SRO level, and is now the subject of an ongoing litigation, *HB, et al. v. BHUFSD, 14-cv-0338, (CS).*[6]**

54.     As of August 9, 2012, no IEP had been developed for BB for the 2012-2013 school year. SD-40.

**Response: Deny. Aver that the CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53. Additionally, the District did offer a continuation of its program at the June 2012 CSE Meeting and the Parents rejected the same. As a result, BB's parents appropriately rejected said IEP. D 39.  See Response 53 above.**

55.     The CSE reconvened as scheduled on August 15, 2012 to develop an IEP for BB for the 2012-2013 school year. SD 40.

**Response: Admit.**

---

[6] While the SRO and the IHOs refused to hear arguments on the malicious and retaliatory call by the District to CPS following the June 2012 CSE Meeting, D 40, further motion practice on these issues are a part of the record provided by the SRO to the Court.

56.     At the August 15, 2012 CSE meeting the CSE received and reviewed progress reports from Gow. SD 40.

**Response: Admit. D 40, p.2 and P NN.**

57.     Jeff Sweets, headmaster of Gow participated in the August 15, 2012, CSE by phone for a limited period of time. SD 40, P NN.

**Response: Admit.**

58.     The CSE developed an IEP for BB for the 2012-2013 school year at the August 15, 2012 meeting. SD 40.

59.     **Response: Admit that the CSE developed an IEP for the 2012-13 school year. However, aver that:**

   i.    **The CSE did, in part, developed an IEP at the June 2015 CSE Meeting and that by law the IEP in effect at that time remained in effect;**

   ii.   **The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.**

   iii.  **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.**

22

60.     The August 2012 CSE recommended a 15:1 special class placement for math and language arts, a general education placement for science and social studies with direct consultant teacher support daily, small group multisensory reading support daily, individual counseling weekly and daily resource room.

**Response: Admit this cites from the CSE but aver:**

   i.  **This shows that the CSE completely ignored what it heard from GOW, where BB had been placed for a year P NN.**

   ii. **The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.**

   iii. **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.**

61.     To further support BB' s needs, the IEP included management strategies, program modifications and accommodations and testing accommodations. SD 40, pp. 14-15.

**Response: Admit only that the said IEP contained management strategies, program modifications and accommodations and testing accommodations. Further aver:**

i. The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.

ii. The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.

iii. The August and June 2012 IEP did not take into account what progress and changes had occurred with BB during the 2011-2012 school year at the Gow School P NN. Notwithstanding the fact that BB made progress during the 2011-12 year at Gow. Tr. 1371-72; 1458-59; 1496-97.

62. The August 2012 CSE recommended an assistive technology consultation, access to audio books, monthly team meetings with school district personnel and the parents, and as needed counseling through the Flexible Support Program. SD 40, pp 14-15, SD 41 p.2.

**Response: Admit this cites from the CSE. Further aver that:**

i. The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.

ii. **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.**

63. The CSE recommended that a IEP be developed to address BB 's behaviors that impeded his learning. SD 40, p. 10.

   **Response: Deny, BHCSD failed to provide a Functional Behavior Assessment FBA and BIP year after year (T: 239, 1162). Also aver:**

   i. **The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.**

   ii. **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP failed to address BB's root academic challenges affecting his behavior. Tr. 1031-32. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281,**

1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.

iii. The BHCSD was offering an unstructured Flex program that had never been implemented before at BHCSD. This was a "crisis intervention model," only to be utilized when BB's behavior or functioning levels reached extremes and he required a calming space to address these behaviors (T: 1119-20).

64. The CSE recommended daily access to the District's Flexible Support Program to support further BB 's social/emotional and behavioral needs. SD 40, pp. 14-15; Tr. 908, 909; SD 41.

Response: Admit but aver that the BHCSD was offering an unstructured Flex program that had never been implemented before at BHCSD. This was a "crisis intervention model," only to be utilized when BB's behavior or functioning levels reached extremes and he required a calming space to address these behaviors (T: 1119-20). Also aver:

i. The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.

ii. The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP failed to address BB's root academic challenges affecting his behavior. Tr. 1031-32. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr.

1284-85, 1277-78. **The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.**

65.    The IEP included five goals designed to address BB's social/emotional/behavioral needs. SD 40 p.13. **Response: Admit but aver that the BHCSD was offering an unstructured Flex program that had never been implemented before at BHCSD. This was a "crisis intervention model," only to be utilized when BB's behavior or functioning levels reached extremes and he required a calming space to address these behaviors (T: 1119-20). Also aver:**

  i.   **The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.**

  ii.  **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP failed to address BB's root academic challenges affecting his behavior. Tr. 1031-32. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.**

66.    The IEP included supplementary aids including preferential seating, refocusing and redirection, Positive reinforcement Plan, the Flexible Support Program and counseling

consultation available throughout the school day to address BB 's behavioral needs. SD 40, pp.14-15.

**Response: Admit but aver:**

i. **The CSE formulated essentially the same IEP as previous years. SD 4 p. 2. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.**

ii. **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.**

67.    On August 31, 2012, the District sent a notice to the Parents attaching the 2012-2013 IEP. SD 41.

**Response: Admit.**

68.    On September 4, 2012, the Parents again notified the District that they were rejecting the IEP and would be sending BB to Gow for the 2012-2013 school year. SD 42.

**Response: Admit.**

The Gow School

69.    The Gow School is not an approved school by the New York State Department of Education. SRO Decision 4, Fn. 2.

28

**Response:** The allegations in paragraph 68 are argument, rather than statements of material fact, and should, therefore, be disregarded by the Court and deemed disputed. Complaint, Dkt No. at 19-20. *Florence County School District Four* v. *Carter,* 510 U.S. 7, 7 (1993). PPHB 15-16. Further Aver that the Gow School has an extraordinary track record of student success. P EE. Moreover, Gow provided for an appropriate education that allowed for progress and followed Dr.Thomas's recommendations. Tr. 1039, 1042, 1056, 1060; P EE.

70.     The hallmark of the Gow reading program is the Reconstructive Language program developed in 1926. Tr. 1352.

**Response:** Admit only that Gow contains a remedial reading program called Reconstructive Language, developed in 1926. Tr. 1352. Denies the rest of the statement as an unsupported opinion. The phoenetic-based program, certified by the International Multisensory Structured Language Education Council, focuses on remediating the core areas of phonics, spelling, vocabulary, and fluency. Tr. 1432-35; P II.

71.     The Program was developed by the founder of Gow. Tr. 1352.

**Response:** Admit that the Remedial Reading Program was among the educational programs developed by Peter Gow, in 1926. Tr. 1352. The phoenetic-based program, certified by the International Multisensory Structured Language Education Council, focuses on remediating the core areas of phonics, spelling, vocabulary, and fluency. Tr. 1432-35; P II.   Mr. Gow pioneered the Program based on the work of Mr. Samuel Orton. Tr. 1394-95.

72.     The Program has not changed in 85 years. Tr. 1434-1435.

**Response: Admit the Program has not changed much. Further aver that the Gow Reconstructive Language Program has been highly effective since its inception, with a track record of success. Tr. 1434-1435.**

73.     Jeff Sweet, the director of the middle school at Gow, testified that there is no published research on the efficacy of the reconstructive language program. Tr. 1374-1375.

**Response: Admit this accurately cites from the testimony of Jeff Sweet. However, deny that there objectively lacks published research on Gow's Individualized Reconstructive Language Program. Tr. 1374-1375. The Reconstructive Language Program is meant to help certain students not learning at a typical pace. Tr. 1394. The Gow Reconstructive Language Program has been highly effective since its inception, with a track record of success. Tr. 1434-1435.**

74.     The Reconstructive Language program does not have a multi-sensory component.

**Response: Deny. The allegations contained in paragraph 73 are unsupported by the record. The Reconstructive Language Program does indeed have a multi-sensory component. Tr. 1394; 1451. It is certified by the International Multisensory Structured Language Education Council 1432.**

75.     The program in its first year consists of memorization by all students of the same 116 sounds. Tr. 1440.

**Response: Admit but aver that it is among the expectations of the Gow program to both memorize and apply such sounds. Tr. 1440. . Further aver that the Gow Reconstructive Language Program has been highly effective since its inception, with a track record of success. Tr. 1434-1435. This Program serves as the pillars of the**

**foundational teaching methods of The Gow School as a phonetic-based program. Tr 1432. All students in the program, including BB, made progress. Tr. 1458, 1460.**

76. The Gow School has no programs to address a student's individual behavioral needs. Tr. 1355-1366.

> **Response: Deny. The allegations contained in paragraph 75 are unsupported and contradicted by the record. Aver that Dr. Thomas stated that the root of BB's problems are his academic challenges affecting his behavior. Tr. 1031-32. Moreover, the Gow School does indeed have programs to address a student's individual behavioral needs. Behavioral issues can be handled within the classroom by the individual's teacher or outside the classroom by the individual's dorm parent. Tr. 1355. Moreover, Gow has general and individualized rules to address students' behaviors. Tr. 1377. P EE. Gow has a structured program, whereby after athletics, the students have dinner and study hall, six nights of the week. Tr. 1355.**

77. The Gow School did not perform any professional behavioral analysis of BB's behaviors that were interfering with his educational progress. Tr. 1490.

> **Response: Deny that professional behavioral analysis was part of Gow's curriculum. Dr. Thomas stated that the root of BB's problems are his academic challenges affecting his behavior. Tr. 1031-32. Further allege that Gow has general and individualized rules to address students' behaviors. Tr. 1377. P EE. Behavioral issues can be handled within the classroom by the individual's teacher or outside the classroom by the individual's dorm parent. Tr. 1355.**

78. BB's Reconstructive Language teacher at Gow for the 2011-2012 school year was John Simms. Tr. 1399.

**Response: Admit.** Also aver that Mr. Simms has struggled himself with dyslexia, and attended the Gow School. Tr. 1454. Currently, Mr. Simms has a Masters in Education and had two summers of training at the Teacher Training Institute for Reconstructive Language. Tr. 1400.

79.     Prior to teaching at Gow, Mr. Simms had been a motor boat salesman and an insurance salesman. Tr. 1409-1410.

**Response: Admit** but avers that this allegation is not a material statement of fact because it only addresses Mr. Simms' qualifications not related to the education context. Further aver that Mr. Simms has struggled himself with dyslexia, and attended the Gow School. Tr. 1454. Mr. Simms has a Masters in Education and had two summers of training at the Teacher Training Institute for Reconstructive Language. Tr. 1400.

80.     Mr. Simms had two weeks of training in the Reconstructive Language program prior to teaching BB. Tr. 1400, 1485.

**Response: Deny.** The allegations contained in paragraph 79 are unsupported and contradicted by the record. Aver that Mr. Simms has a Masters in Education and had two summers of training at the Teacher Training Institute for Reconstructive Language. Tr. 1400. Moreover, Mr. Simms has struggled himself with dyslexia, and attended the Gow School. As a result, Mr. Simms intimately understands the educational program at Gow, ultimately as someone who succeeded within the Program. Tr. 1454.

81.     Gow does not monitor behavioral issues. Tr. 1337, 1376-1377.

**Response: Deny. The allegations contained in paragraph 80 are unsupported and contradicted by the record. Further allege that Gow has general and individualized rules to address students' behaviors. Tr. 1377. Behavioral issues can be handled within the classroom by the individual's teacher or outside the classroom by the individual's dorm parent. Tr. 1355.**

82. BB finished his first year at Gow with a GPA of 1.81 out of a possible 4. SD 43, p.37.

    **Response: Admit this accurately cites BB's GPA. But aver:**

    i.   **BB's academic performance improved while at Gow. Tr. 1527-32. SD 43, pp. 38 – 43.**

    ii.  **BB went up about two grade levels with his reading and decoding skills and his memory, memorizing ability. Tr. 1527-32.**

    iii. **BB's effort and homework participation increased and improved in every subject except Computers. SD 43, pp. 38 – 43.**

    iv.  **This is in stark contrast to his failing performance while at Byram Hills. Tr. 1529-30.**

    v.   **BB also made significant progress both socially and behaviorally. Tr. 1526.**

83. In his academic subjects, he scored a C-(algebra), a D(computers), a D+(earth science), a C(English) , a C(history) and a C(reconstructive language). SD 43, p. 37.

    **Response: Admit this accurately cites BB's transcript. But aver that:**

    i.   **BB's academic performance improved while at Gow. Tr. 1527-32. SD 43, pp. 38 – 43.**

    ii.  **BB went up about two grade levels with his reading and decoding skills and his memory, memorizing ability. Tr. 1527-32.**

iii. **BB's effort and homework participation increased and improved in every subject except Computers. SD 43, pp. 38 – 43.**

iv. **This is in stark contrast to his failing performance while at Byram Hills. Tr. 1529-30.**

v. **BB also made significant progress both socially and behaviorally. Tr. 1526.**

84.     At Gow, BB struggled to hand in homework on time. SD 43, pp.

6,7,13,14,2122,39,40.

**Response: Deny. Aver that BB's effort and homework participation increased and improved in every subject except Computers. SD 43, pp. 38 – 43. This is in stark contrast to his failing performance while at Byram Hills. Tr. 1529-30.**

85.     At Gow, BB failed to take advantage of extra-help tutorials. SD 43, p. 10.

**Response: Deny. Aver that in the Final Marking Period, John Simms stated BB "really directed his efforts to positive production of work this marking period...Brandon put forth his best effort..." SD 43 p. 43.**

86.     BB failed to maintain consistency as the difficulty of the workload progressed. SD 43, p. 42.

**Response: Deny. Aver that in the Final Marking Period, Luke Salerno stated BB "required far less prompts to stay on task than in the past..." SD 43 p. 42. This is in stark contrast to his failing performance while at Byram Hills. Tr. 1529-30. John Simms clearly stated that BB demonstrated progress at Gow. Tr. 1458-60; 1481-82.**

87. BB's assignments were late. SD 43, pp. 27,40,41.

**Response: Deny. Aver that BB's academic performance improved while at Gow. SD 43, pp. 38 – 43. BB's effort and homework participation increased and**

improved in every subject except Computers. SD 43, pp. 38 - 43. In the Final Marking Period, Bradley Rausch stated BB "more assignments were submitted on time this marking period than any other marking period…" SD 43, pp. 40.

88. BB was off-topic in class. SD 43, pp. 14, 17, 39.

**Response: Deny. Aver that BB's academic performance improved while at Gow. SD 43, pp. 38 – 43. In the Final Marking Period, John Simms stated, "Brandon worked to maintain focus and stay on task." SD 43 p. 43. John Simms clearly stated that BB demonstrated progress at Gow in multiple subject areas. Tr. 1458-60; 1481-82.**

89. BB was not prepared for class. SD 43, pp. 5, 38.

**Response: Deny. Aver that BB's academic performance improved while at Gow. SD 43, pp. 38 – 43. In the Final Marking Period, John Lindahl stated, "Brandon made significant improvement in his homework preparation" SD 43 p. 48. Jeff Sweet stated that BB progressed at his own pace. Tr. 1371-72. John Simms also stated that BB demonstrated progress at Gow in multiple subject areas. Tr. 1458-60; 1481-82.**

90. BB frequently disrupted class. SD 43, pp. 8, 10, 17.

**Response: Deny. Aver that BB's academic performance improved while at Gow. SD 43, pp. 38 – 43. In the Final Marking Period, John Simms stated, "Brandon really directed his efforts to positive production of work this marking period…Brandon worked to maintain focus and stay on task." SD 43 p. 43. John Simms stated that BB demonstrated progress at Gow in multiple subject areas.**

Tr. 1458-60; 1481-82. BB has shown marked improvement in his behaviors as it relates to disrupting the class. Tr. 1471-72.

91.     John Simms' goal for BB for the 2012-2013 school year was for him to come out of the gates on fire. SD 43, p. 43.

**Response: Admit that these were a portion of the comments Mr. Simms' made in his detailed evaluation report of BB. SD 43 p. 43.Aver that Mr. Simms made his projections for BB's 2012-13 school year at the end of BB's 2011-12 school year. Mr. Simms also stated that BB demonstrated progress at Gow in multiple subject areas during the 2011-12 school year. Tr. 1458-60; 1481-82.**

92. In the first marking period of the 2012-2013 school year, BB's GPA at Gow was 1.75, lower than that of the previous year. SD 49, p.8.

**Response: Admit that BB's GPA at Gow was 1.75 for the first marking period. But aver that BB's GPA was 2.14 for the second marking period of the 2012-13 school year. Tr. 1549. SD 49 pp. 1. This is in stark contrast to his failing performance while at Byram Hills. Tr. 1529-30. Furthermore, BB's academic performance declined in the third marking period only because of clinical depression and emotional difficulties. Tr. 1549-50.**

93.     His homework and assignments were missing or incomplete. SD 49, p.

**Response: Deny the implication that the majority of BB's Homework was missing or incomplete. SD 49. Avers that "Brandon worked diligently on many of his homework assignments…He earned a 96% on his homework." SD 49 pp. 1. Mr. Simms also states that BB's homework issues has been resolved and dealt with. Tr. 1470-71.**

94.    He did not complete all materials for review. SD 49, p. 10.

**Response:  Deny the implication that BB did not complete the majority of materials for review. As a matter of fact, BB resubmitted several of his assignments to work to improve his grade. SD 49, p. 10. Mr. Simms states that BB's homework issues has been resolved and dealt with productively. Tr. 1470-71.**

95.    He did not resubmit assignments when allowed to. SD 49, p. 10.

**Response: Deny the implication that BB did not complete the majority of materials for review. SD 49.  As a matter of fact, BB resubmitted several of his assignments to work to improve his grade. SD 49, p. 10. Mr. Simms states that BB's homework issues has been resolved and dealt with productively. Tr. 1470-71.**

96.    He did not devote time outside of the classroom to schoolwork. SO 49, p. 12.

**Response: Deny the implication that BB did not devote time outside of the classroom to schoolwork. BB had earned a 80% of assignment points. SD 49, p.12. Mr. Simms states that BB's homework issues has been resolved and dealt with productively. Tr. 1470-71.**

97.    He exhibited a lack of effort. SO 49, p. 12.

**Response: This paragraph is unsupported and contradicted by the record. Further, it is argument, not statements of material fact, and should be disregarded. BB had earned a 80% of assignment points. SD 49, p.12. Mr. Simms stated a marked improvement in BB's effort in class. Tr. 1464, 1472.**

98.    He missed classes often. SO 49, p. 13.

**Response: Deny the implication that BB often  missed classes. The rest of the paragraph is argument and should be disregarded. SD 49.**

37

99.     He did not properly use his binder and student planner. SO 49, p. 13.

**Response: Deny the implication that BB could not properly use his binder and student planner. Any faults were due to BB's illness. Moreover, BB's conduct grade was satisfactory. SD 49, p. 13. Mr. Simms stated a marked improvement in BB's effort in class. Tr. 1464, 1472.**

100.    He did not do required out-of-class reading assignments. SO 49, p. 13.

**Response: Deny the implication that BB did not do all required out-of-class reading assignments. BB went over his missed work with his teacher. SD 49, p. 13. Mr. Simms states that BB's homework issues has been resolved and dealt with productively. Tr. 1470-71.**

101.    BB finished the 2012-2013 school year at Gow with a D+ in English, a D- in Science, a D- in reconstructive language, a C- in Algebra, a B in global history, a B- in drawing and a D in theater. P GG.

**Response: Admit but aver that BB was consistently failing every class year after year at Byram Hills. Tr. 1216, 1290. BB's academic performance at Gow is in stark contrast to his failing performance while at Byram Hills. Tr. 1529-30. Jeff Sweet stated that BB progressed at his own pace. Tr. 1371-72. John Simms stated that BB demonstrated progress at Gow in multiple subject areas. Tr. 1481-82.**

102.    BB read the same books at Gow that he had read in the fifth grade at the School District. Tr. 1586-1587.

**Response: Deny that BB consistently reread books he had previously read. Aver that BB reread the book "Crash" in Eagle Hill. Tr. 1586-87. Moreover, BB had to**

read one different book for each marking period; including Doctor Dolittle and My Side of the Mountain. Tr. 1417. As well as The Watsons go to Birmingham. SD 43, p. 41. Alongside various poetry and anthologies, the Spoon River Anthology, and Sherlock Holmes, by Sir Arthur Conan Doyle. SD 49, p. 24.

103. BB's grades in all subjects except history were lower in 2012-2013 than they were the year before. SO 43, p. 37; P-GG; Tr. 1498-1500.

> **Response: Deny. The allegations contained in paragraph 97 are unsupported and contradicted by the record. BB's grades also went up or stayed the same. Tr. 1498-1500. Moreover, Jeff Sweet stated that BB progressed at his own pace. Tr. 1371-72. John Simms also stated that BB demonstrated progress at Gow in multiple subject areas. Tr. 1481-82.**

104. At the Hearing in June, 2013, Mr. Sweets stated that doubted that Gow was appropriate for BB and was unsure whether he would be asked to return for the 2013-2014 school year. Tr. 1388-1390.

> **Response: Deny. The allegations contained in paragraph 98 are unsupported and contradicted by the record. Mr. Sweet did not state that he doubted Gow's appropriateness for BB. Tr. 1388-1390. Moreover, whether or not parents and/or Gow decide about the 2013-14 year is a decision about next year and not a decision as to whether or not Gow is appropriate for the 2011-2013 school years. Tr. 1389.**

105. BB did not attend Gow for the 2013-2014 school year. School District's Answer to the SRO, 1 Exhibit A.

**Response: Admit. The 2013-2014 school year is not in issue at this hearing. Moreover, the reasons for this fact, is that the Parents could no longer financially afford to continue to place BB while still waiting for an opinion on the 2012-2013, 2011-2012 and 2010-2011 school years.**

<u>Dr. Thomas' Report</u>

106.    Parents' private psychologist, Dr. Randall Thomas conducted an evaluation of BB in July 2011. SD 25, p. 2. **Response: Admit.**

107.    The Parents mailed Dr. Thomas' report to the District on September 12, 2011 after BB was already attending Gow. SD 25.

**Response: Admit that the Parents emailed Dr. Thomas' report to the District on September 12, 2011. However, aver that Parents met Dr. Thomas in July, 2011. SD 25. During this meeting, Parents provided Dr. Thomas with a history of B.B. and the District's IEP and their testing, and did not discuss Gow with Dr. Thomas. Tr. 1592. Further aver that notwithstanding Parents' concerns, the District did not schedule a CSE even after receipt of Dr. Thomas' report. Tr. 135. SD 25.**

108.    The Parents retained Dr. Thomas on the advice of their attorney. Tr.1300-1301.

**Response: Deny, aver that Dr. Thomas was referred to Parents by another law firm, their former attorneys Littman and Krooks. Tr.1300-1301.**

109.    Dr. Thomas' knowledge of the Gow program was based on promotional materials about Gow that he had received from Parents attorney, Tr. 1104, and his review of the Gow website. Tr. 1106.

**Response:** Deny. Aver that Dr. Thomas did not recommend Gow specifically, but only residential programs generally. Tr. 1105-06. Any implication that Dr. Thomas recommended Gow was stricken from the Record. Tr. 1105-08. Dr. Thomas did conduct independent research on Gow. Tr. 1106. Dr. Thomas is not an educational consultant but rather, knows about the nature of the placement where the child is best suited. Tr. 1089.

110.    Dr. Thomas had no specific knowledge of Gow or its programs. Tr. 1105.

**Response:** Admit only that at the time that Dr. Thomas recommended the residential program in general, he had no specific knowledge of Gow. Tr. 1105-06. Dr. Thomas is not an educational consultant but rather, knows about the nature of the placement where the child is best suited. Tr. 1089. Dr. Thomas also acted as consultant to private schools, including the Poughkeepsie Day School, as well as public school districts. Tr. 1082-83.

111.    Dr. Thomas did not speak with anyone at the District before completing his report. Tr. 1087.

**Response:** Admit but aver that no one at the District was available due to the Summertime schedule. Tr. 1087. His report was worked on in July D 25.

112.    The majority of the information in Dr. Thomas' report came from HB, BB's mother. Tr. 1090.

**Response:** Deny that the majority of information in Dr. Thomas' report came from HB, BB's mother. Aver that Dr. Thomas' expert recommendations, D 25, p. 13, were based on application of proven scientifically-based testing remedial strategies, for those suffering from multiple learning disabilities and ADHD. Tr.

**1052-53. The vast majority of the information in Dr. Thomas' report came from his testing that is evident throughout his report D 25.**

113.     Dr. Thomas's license as a school psychologist had lapsed at the time he conducted BB's evaluation. Tr. 1092.

**Response: Deny. The allegations contained in paragraph 112 are unsupported and contradicted by the record. Tr. 1092. There is no formal certification process for School Psychologists. Tr. 1082. Aver that Dr. Thomas is qualified to conduct BB's evaluation. At all times Dr. Thomas was a licensed psychologist by the State of New York. IHO, Parents' Exhibit L, Curriculum vitae of Randall Thomas. Moreover, Dr. Thomas had real experience as a public educator and continued to work with schools both public and private. Tr. 1082-83.**

114.     Dr. Thomas had not worked in a school district for almost 30 years at the time he evaluated BB and testified at the Hearing. Tr. 1083.

**Response: Deny. The allegations contained in paragraph 113 are unsupported and contradicted by the record. Tr. 1083. Aver that Dr. Thomas frequently consults with Public and Private schools. Tr. 1082-84. Dr. Thomas also helps Public Schools and School Districts formulate special education interventions and also provide testimonies for Districts. Tr. 1083.**

115.     Dr. Thomas' testing results were considered at the CSE meeting to develop BB's IEP for the in the 2012-2013 school year. SD 40, pp. 2, 3, 6,7, 9.

**Response: Deny that CSE considered Dr. Thomas' Report. PSRO ¶ 21. The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into**

account BB's unique learning needs. Tr. 1151. The IEP was not based on
scientifically or peer-reviewed research and the IEP did not explain the
methodology for the multisensory reading program curriculum. Tr. 1284-85,
1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The
IEP failed to propose speech/language therapy, or a residential placement. Tr.
148. D 25. D 40.

116.    Dr. Thomas testified that grades are an indication of a whether a student is on a
positive track. Tr. 1098.

**Response: Deny. The allegations contained in paragraph 108 are unsupported
and contradicted by the record. Aver that Dr. Thomas stated, grades "may or
may not be then correlated…" with indication of a positive track. Tr. 1098.**

Findings of the SRO

117.    Parents appealed from so much of the decision of the IHO which dismissed their
tuition reimbursement claims for the 2011-2012 and 2012-2013 school years. SRO
Decision, p.5.

**Response: Admit that these were just some of the Demands Parents sought. Also
aver that Parents sought an Order finding that the IHO's Decision is a nullity.
Granting Petitioners prevailing party status, an Order finding that Respondent's
2010-11, 2011-12 and 2012-13 IEPs were not appropriate. A Finding that BH
committed retaliation against Parents. Attorneys' fees and costs. PSRO pp. 20-
21.**

118.    The District cross-appealed from so much of the decision of the IHO which
awarded to Parents as compensatory education, $1000.00 for tutoring services

43

provided by Parents to student during the 2010-2011 school year. SRO Decision, p. 5.

**Response: Admit. But there seems to be no explanation by the SRO as to how tuition reimbursement was awarded tutor reimbursement for 2010-2011 and why the facts underlying the SRO's decision did not apply to the Parent's claim for tuition reimbursement for the 2011-2012 and 2012-2013 school years.**

119.    The SRO found that the IHO accurately recounted the facts of the case, carefully considered the testimonial and documentary evidence, addressed the specific issues identified in the Parents' due process complaint, and applied the proper legal standard to the facts of the case. SRO Decision, pp. 8-9.

**Response: Admit this accurately cites the SRO Decision. However, courts must refrain from deferring to the SRO's conclusions if the findings of the SRO are unsupported. *E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ. 2012). Moreover, here the conduct of the hearing by IHO Freed utterly failed to provide the parties with a reliable record and having three other IHO's does nothing to improve the taint on the record.**

120.    The SRO found that the IHO conducted the hearing in a manner consistent with the requirements of due process. SRO Decision, p. 8.

**Response: Admit this accurately cites the SRO Decision. However, courts must refrain from deferring to the SRO's conclusions if the findings of the SRO are unsupported. *E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ. 2012). IHO simply did not conduct a hearing in a manner consistent with the**

requirements of due process and this is seen by the fact that the SRO's office deemed it necessary to remove IHO Freed from her duties as it concerned this hearing or any other future hearing. Moreover, Plaintiffs' unopposed application to the New York State Department of Education to have IHO removed was resplendent with examples of the lack of due process. While the Defendant did not oppose this application and failed to put in any response, all of this was ignored by the SRO.[7]

121.    The SRO adopted the findings and conclusions of the SRO that the District failed to provide student with a FAPE during the 2010-2011 school year and offered student a FAPE for the 2011-2012 and 2012-2013 school years. SRO Decision, p. 7, citing to IHO Decision, pp.20-29. **Response: Admit this accurately cites the SRO Decision. However, courts must refrain from deferring to the SRO's conclusions if the findings of the SRO are unsupported. *E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ. 2012)**

122.    As a preliminary matter, the SRO found that Parents' pleadings could be rejected for failing to comply with the 20-page limit requirement. SRO Decision, p. 8.
**Response: Admit this is an accurate restatement of the record. However, aver that the SRO in fact stated, "I exercise my discretion and decline to reject the parents' pleadings…" SRO p. 8.**

123.    The SRO exercised his discretion and declined to reject Parents' pleadings. SRO Decision, p. 8.

---

[7] This application is a part of the record of this hearing.

**Response:** Admit.

124.    The SRO concluded that the IEP developed in March 2011 for the 2011-2012
school recommending a 15: 1 special class placement for academic subjects, resource
room for 45 minutes daily and individual counseling by a psychologist for 30 minutes
once year was reasonably calculated to provide educational benefits to the student.
SRO Decision, p. 13.

**Response: Admit this accurately cites the SRO Decision. However, courts must
refrain from deferring to the SRO's conclusions if the findings of the SRO are
unsupported.** *E.S. et al. v. Katonah Lewisboro Central School District***, 742 F. Supp.
2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ.
2012). Aver:**

  i.  **From the outset, the parents objected to the program's effectiveness. Tr. 88-89.
  BB was consistently failing every class year after year. Tr. 1216, 1290. Parents
  did not know what the clear-cut reading program was going to be and what the
  methodology was in the IEP. Tr. 1285. The parents argued that the same
  methods that had been tried and tested and proved unsuccessful for BB were
  being recommended year after year. Tr. 1285. D-13. PPHB 10-11.**

  ii.  **District's proposed 2011-2012 programs were not at the level of Dr. Thomas'
  expert recommendations, D 25, p. 13, which were based on application of
  proven scientifically-based remedial strategies, for those suffering from
  multiple learning disabilities and ADHD. Tr. 1052-53.  D 25, p. 8. PPHB 12-13.**

46

As a matter of fact, the District never even considered, let alone factored, Dr. Thomas's recommendations into BB's 2011-12 IEP. T 1298.

iii. **The IEP was inappropriate for BB, given his high level of disability. Tr. 1049. Given BB's chronic failure, Tr. 1033, Dr. Thomas specifically recommended that BB skip the continuum of services to the most intensive, the most comprehensive services, to make sure that BB gets on track as quickly as possible. Tr. 1034. Dr. Thomas believed that BB's evaluation revealed that BB's disability affected BB's capacity to participate within an academic environment. Tr. 1031. The required program had to be very much specialized and oriented towards BB's reading disability and remediate his language issues. Tr. 1034. BB needs an environment in which the classroom experience complements and adds to the individual remediation. Tr. 1035.**

125.    In response to Parents' claims that the 2011-2012 IEP provided the "same services and methods as the prior year," the SRO found that the IEP added the use of a calculator during math class and on tests and added multisensory reading support for 45 minutes daily. SRO Decision, p. 13.

**Response: Admit this is an accurate restatement of the record. SRO Decision. Admit this accurately cites the SRO Decision. However, courts must refrain from deferring to the SRO's conclusions if the findings of the SRO are unsupported. *E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ. 2012). Aver:**

i. **From the outset, the parents objected to the program's effectiveness. Tr. 88-89. BB was consistently failing every class year after year. Tr. 1216, 1290. Parents**

did not know what the clear-cut reading program was going to be and what the methodology was in the IEP. Tr. 1285. The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year. Tr. 1285. D-13. PPHB 10-11.

ii. District's proposed 2011-2012 programs were not at the level of Dr. Thomas' expert recommendations, D 25, p. 13, which were based on application of proven scientifically-based remedial strategies, for those suffering from multiple learning disabilities and ADHD. Tr. 1052-53. D 25, p. 8. PPHB 12-13. As a matter of fact, the District never even considered, let alone factored, Dr. Thomas's recommendations into BB's 2011-12 IEP. T 1298.

iii. The IEP was inappropriate for BB, given his high level of disability. Tr. 1049. Given BB's chronic failure, Tr. 1033, Dr. Thomas specifically recommended that BB skip the continuum of services to the most intensive, the most comprehensive services, to make sure that BB gets on track as quickly as possible. Tr. 1034. Dr. Thomas believed that BB's evaluation revealed that BB's disability affected BB's capacity to participate within an academic environment. Tr. 1031. The required program had to be very much specialized and oriented towards BB's reading disability and remediate his language issues. Tr. 1034. BB needs an environment in which the classroom experience complements and adds to the individual remediation. Tr. 1035.

126. The SRO found that the District recommended an FBA and a BIP to be implemented during the 2011-2012 school year because student needed strategies,

including positive behavioral interventions, supports and other strategies to address his interfering behaviors. SRO Decision, p. 13.

**Response: Admit this is an accurate restatement of the record. SRO Decision. However, aver the SRO cited from testimony given by the District Director of Special Services. SRO 13, Tr. 91, 96, 163-64, 236-38. courts must refrain from deferring to the SRO's conclusions if the findings of the SRO are unsupported. *E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ. 2012). Aver:**

   i. **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP failed to address BB's root academic challenges affecting his behavior. Tr. 1031-32.**

127.    The CSE recommended that the FBA and BIP be developed during the 2011-2012 school year because student would be in different environment with different grade level expectations. SRO Decision, p. 13, citing Tr. 237-238.

**Response: Admit this is an accurate restatement of the record. SRO Decision. However, aver the SRO cited from testimony given by the District Director of Special Services. SRO 13, Tr. 237-38. Courts must refrain from deferring to the SRO's conclusions if the findings of the SRO are unsupported. *E.S. et al. v. Katonah Lewisboro Central School District*, 742 F. Supp. 2d 417, 439-40 (S.D.N.Y. 2010), affirmed 2012 U.S. App. LEXIS 13811 (2nd Circ. 2012). Aver:**

   i. The parents argued that the same methods that had been tried and tested and proved unsuccessful for BB were being recommended year after year. Tr. 1285. D-13. PPHB 10-11.

  ii. The programs offered in the proposed IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP failed to address BB's root academic challenges affecting his behavior. Tr. 1031-32.

 iii. There has been a history of failed, informal, and/or undeveloped BIP and FBA. Tr. 238, 378, 380, 388; Tr. 978.

128. The SRO gave deference to the findings of the IHO who credited the account of the District's Director of Special Services as it pertained to conducting the FBA and the BIP. SRO Decision, p. 13, footnote 10.

**Response: Admit this is an accurate restatement of the record. SRO Decision. However, aver the SRO cited from the IHO. SRO 13. Courts do not defer to Administrative Agencies on questions of law.** *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, **397 F.3d 77, 82 (2d Cir. 2005). Moreover, aver that no deference is owed where there exists substantial IHO incompetence. For example:**

  i. **The ten-day Hearing spanned a period of five months from January to June of 2013. Tr. 1-1603.**

 ii. **Freed was removed as the IHO for present and all future hearings at the Board of Education for failure to render a decision within the proscribed time limits. IHO Exhibit 3.**

iii. **IHO Freed displayed bias in favoring of District over Plaintiffs. T: 20-21. PPHB 3.**

iv. **IHO Freed had difficulties keeping up with the exhibits, reading time, hearing witnesses and counsel speaking, and displayed indeterminable pauses where she often failed to make rulings during the hearings. T: 1182-1183, 1139. PPHB 3. PSRO 3.**

2012-2013

129.    The SRO found that Parents had a full opportunity to participate in the development of student's IEP for the 2012-2013 school year. SRO Decision, p. 14.

**Response: Admit this is an accurate restatement of the record. However, Courts do not defer to Administrative Agencies on questions of law. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005). Aver that the IEP developed in August 2012 was developed after the district had made its false and malicious call to CPS after the June 2012 CSE Meeting. P NN. The retaliation action is currently pending before the District Court. Docket No. 7:14-cv-0338 (CS), Doc. No. 51.**

130.    The SRO found that parents' claim that they were not have an opportunity to participate in the development of the 2011-2012 IEP was unsupported by the hearing record (and that Parents had provided no citation to any record evidence). SRO Decision, p. 14.

**Response: Admit this is an accurate restatement of the record. However, Courts do not defer to Administrative Agencies on questions of law. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005). Aver that the IEP developed in August 2012 was developed after the district had made its false and malicious call to CPS after the June 2012 CSE Meeting. P NN. The**

retaliation action is currently pending before the District Court. Docket No. 7:14-cv-0338 (CS), Doc. No. 51.

131.    The SRO found there was participation: Parents' counsel for parents attended with parent; he was provided multiple opportunities to speak; he presented parents' views relevant to the development of the IEP; and he even objected to the manner in which the meeting was conducted. SRO Decision, p. 14.

**Response: Admit this is an accurate restatement of the record. However, Courts do not defer to Administrative Agencies on questions of law. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005). Aver that the IEP developed in August 2012 was developed after the district had made its false and malicious call to CPS after the June 2012 CSE Meeting. P NN. The retaliation action is currently pending before the District Court. Docket No. 7:14-cv-0338 (CS), Doc. No. 51.**

132.    The SRO found that while the meeting was at times contentious, none of the CSE members impeded parents' ability to participate in the meeting, including allowing parents an opportunity to relay her concerns and to speak about the adequacy of evaluative information and student's need for assistive technology. SRO Decision, p. 14.

**Response: Admit this is an accurate restatement of the record. However, Courts do not defer to Administrative Agencies on questions of law. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005). Aver that the IEP developed in August 2012 was developed after the district had made its false and malicious call to CPS after the June 2012 CSE Meeting. P NN. The**

retaliation action is currently pending before the District Court. Docket No. 7:14-cv-0338 (CS), Doc. No. 51.

133.    The SRO found that the CSE obtained participation of the student's headmaster at Gow by telephone who provided information about student's then-current functioning which was reflected on the August 2012 IEP. SRO Decision, p. 14.

**Response: Admit this is an accurate restatement of the record. Notwithstanding the false and malicious call to CPS, the participation of a GOW representative at a CSE Meeting, shows that the parents continued to cooperate with the District.**

134.    The SRO found that the services and program recommended for student for the 2012-2013 school year, including a 15:1 special class placement for math and language arts, a general education placement for science and social studies with direct consultant teacher support in each class daily, resource room services in the flexible support program room for 45 minutes daily, multisensory reading support for 45 minutes daily, and individual counseling with a psychologist for 30 minutes once a week, was reasonably calculated to provide meaningful benefit to student. SRO Decision, p. 15 and citations to the record therein. **Response: Admit this is an accurate restatement of the record. SRO Decision. However, aver the SRO cited from the IHO. SRO 13. Courts do not defer to Administrative Agencies on questions of law.** *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.,* **397 F.3d 77, 82 (2d Cir. 2005). Also aver:**

    i.  **The CSE formulated essentially the same IEP as previous years. PSRO p. 11, ¶ 38. Tr. 1052-53, in spite of the fact that BB was consistently failing every class year after year. Tr. 1216, 1290.**

ii. **The programs offered in the proposed 2012-2013 IEP still did not follow the recommendations of Dr. Thomas. Tr. 1052-53. The 2012-13 IEP did not take into account BB's unique learning needs. Tr. 1151. The IEP failed to address BB's root academic challenges affecting his behavior. Tr. 1031-32. The IEP was not based on scientifically or peer-reviewed research and the IEP did not explain the methodology for the multisensory reading program curriculum. Tr. 1284-85, 1277-78. The IEP failed to consider BB's social hindrance. Tr. 1281, 1284. The IEP failed to propose speech/language therapy, or a residential placement. Tr. 148. D 25. D 40.**

iii. **The BHCSD was offering an unstructured Flex program that had never been implemented before at BHCSD. This was a "crisis intervention model," only to be utilized when BB's behavior or functioning levels reached extremes and he required a calming space to address these behaviors (T: 1119-20).**

135. The SRO found that parents' preference for a residential placement was correctly denied because there was no indication in the hearing record that student's special education needs were no severe that they could only be appropriately addressed in a residential placement. SRO Decision, p. 15.

i. **Response: Admit this is an accurate restatement of the record. SRO Decision. SRO 15-16. Aver that the CSE formulated essentially the same IEP as previous years. Tr. 1053. Notwithstanding the fact that BB was consistently failing every class year after year. Tr. 1216, 1290. The IEP was inappropriate for BB, given his high level of disability. Tr. 1049. Given BB's chronic failure, Tr. 1033, Dr. Thomas specifically recommended, and Parents concurred, (Tr. 1299, 1301)**

54

**that BB skip the continuum of services to the most intensive, the most comprehensive services, to make sure that BB gets on track as quickly as possible. Tr. 1034. Dr. Thomas believed that BB needs an environment in which the classroom experience complements and adds to the individual remediation. Tr. 1035.**

136.     The SRO found that the CSE reasonably departed from parents' private evaluators' recommendation that student required a residential placement because the law does not require an IEP to adopt the particular recommendation of an expert; it only requires that recommendation be considered. SRO Decision, p. 16.

**<u>Response:</u> Admit this is an accurate restatement of the record. SRO Decision. SRO 15-16. However, aver that Courts do not defer to Administrative Agencies on questions of law. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005). Also aver that the CSE formulated essentially the same IEP as previous years. Tr. 1053. Notwithstanding the fact that BB was consistently failing every class year after year. Tr. 1216, 1290. By contrast, BB was clearly demonstrating progress at Gow. Tr. 1458-60; 1481-82.**

137.     The SRO found that the evidence revealed that the August 2012 CSE believed that the student could be satisfactorily be educated in the less restrictive district public schools. SRO Decision, p. 16.

**<u>Response:</u> Admit this is an accurate restatement of the record. SRO Decision. SRO 15-16. However, aver that the CSE formulated essentially the same IEP as previous years. Tr. 1053. Notwithstanding the fact that BB was consistently**

**failing every class year after year. Tr. 1216, 1290. By contrast, BB was clearly demonstrating progress at Gow. Tr. 1458-60; 1481-82.**

138.    The SRO dismissed Parents' claim arising out of 504 of the Rehabilitation Act of 1973 because the SRO's jurisdiction is limited to matters arising under the IDEA or its state counterpart. SRO Decision, p. 16.

**Response: Admit this is an accurate restatement of the record. SRO Decision. SRO 16. However, aver that the retaliation action is currently pending before the District Court. Docket No. 7:14-cv-0338 (CS), Doc. No. 51.**

139.    Having found that the hearing supported the IHO's determinations, the SRO did not reach the issues of whether Gow was an appropriate unilateral placement for the 2011-2012 and 2012-2013 school year or whether equitable considerations weighed in favor of parents' request for relief. SRO Decision, p. 17.

**Response: Admit. Accordingly, no deference should be afforded the SRO on this issue.**

WHEREFORE, for the reasons stated herein and in Plaintiff's Memorandum of Law, Plaintiff's Motion for Summary Judgment should be granted and Defendant's Motion for Summary Judgment should be denied.

As pursuant to 28 U.S.C. § 1746, I swear or affirm under penalty of perjury under United States laws that my answers in this affirmation / declaration are true and correct.

Dated: Katonah, New York
April 1, 2016

_____
Peter D. Hoffman, Esq. (PH-8306)
LAW OFFICE OF PETER D. HOFFMAN, P.C.
Attorneys for Plaintiffs
200 Katonah Avenue
Katonah, NY 10536

_____
Yifei He, Esq. (YH-9382)
LAW OFFICE OF PETER D. HOFFMAN, P.C.
Attorneys for Plaintiffs
200 Katonah Avenue
Katonah, NY 10536